JS 44  (Rev. 02/19)

# CIVIL COVER SHEET

The JS 44 civil cover sheet and the information contained herein neither replace nor supplement the filing and service of pleadings or other papers as required by law,  except as provided by local rules of court.  This form, approved by the Judicial Conference of the United States in September 1974, is required for the use of the Clerk of Court for the purpose of initiating the civil docket sheet.  *(SEE INSTRUCTIONS ON NEXT PAGE OF THIS FORM.)*

| I. (a)  PLAINTIFFS | DEFENDANTS |
|---|---|
| Walker, Matthew | Accenture PLC & Accenture LLP |

**(b)**   County of Residence of First Listed Plaintiff      Alameda County, CA
               *(EXCEPT IN U.S. PLAINTIFF CASES)*

County of Residence of First Listed Defendant
               *(IN U.S. PLAINTIFF CASES ONLY)*
NOTE:   IN LAND CONDEMNATION CASES, USE THE LOCATION OF
         THE TRACT OF LAND INVOLVED.

**(c)**   Attorneys *(Firm Name, Address, and Telephone Number)*

Michael J. Reilly, Esq., Cicchiello & Cicchiello LLP, 364 Franklin Avenue, Hartford, CT 06114, 860-296-3457

Attorneys *(If Known)*

## II.  BASIS OF JURISDICTION *(Place an "X" in One Box Only)*

☐ 1   U.S. Government
      Plaintiff

☒ 3   Federal Question
      *(U.S. Government Not a Party)*

☐ 2   U.S. Government
      Defendant

☐ 4   Diversity
      *(Indicate Citizenship of Parties in Item III)*

## III.  CITIZENSHIP OF PRINCIPAL PARTIES *(Place an "X" in One Box for Plaintiff and One Box for Defendant)*
*(For Diversity Cases Only)*

| | PTF | DEF | | PTF | DEF |
|---|---|---|---|---|---|
| Citizen of This State | ☐ 1 | ☐ 1 | Incorporated *or* Principal Place of Business In This State | ☐ 4 | ☐ 4 |
| Citizen of Another State | ☐ 2 | ☐ 2 | Incorporated *and* Principal Place of Business In Another State | ☐ 5 | ☐ 5 |
| Citizen or Subject of a Foreign Country | ☐ 3 | ☐ 3 | Foreign Nation | ☐ 6 | ☐ 6 |

## IV.  NATURE OF SUIT *(Place an "X" in One Box Only)*
Click here for: Nature of Suit Code Descriptions.

| CONTRACT | TORTS | | FORFEITURE/PENALTY | BANKRUPTCY | OTHER STATUTES |
|---|---|---|---|---|---|
| ☐ 110 Insurance | **PERSONAL INJURY** | **PERSONAL INJURY** | ☐ 625 Drug Related Seizure of Property 21 USC 881 | ☐ 422 Appeal 28 USC 158 | ☐ 375 False Claims Act |
| ☐ 120 Marine | ☐ 310 Airplane | ☐ 365 Personal Injury - Product Liability | ☐ 690 Other | ☐ 423 Withdrawal 28 USC 157 | ☐ 376 Qui Tam (31 USC 3729(a)) |
| ☐ 130 Miller Act | ☐ 315 Airplane Product Liability | ☐ 367 Health Care/ Pharmaceutical | | | ☐ 400 State Reapportionment |
| ☐ 140 Negotiable Instrument | ☐ 320 Assault, Libel & Slander | Personal Injury | | **PROPERTY RIGHTS** | ☐ 410 Antitrust |
| ☐ 150 Recovery of Overpayment & Enforcement of Judgment | ☐ 330 Federal Employers' Liability | Product Liability | | ☐ 820 Copyrights | ☐ 430 Banks and Banking |
| ☐ 151 Medicare Act | ☐ 340 Marine | ☐ 368 Asbestos Personal Injury Product Liability | | ☐ 830 Patent | ☐ 450 Commerce |
| ☐ 152 Recovery of Defaulted Student Loans (Excludes Veterans) | ☐ 345 Marine Product Liability | **PERSONAL PROPERTY** | | ☐ 835 Patent - Abbreviated New Drug Application | ☐ 460 Deportation |
| | | | | ☐ 840 Trademark | ☐ 470 Racketeer Influenced and Corrupt Organizations |
| ☐ 153 Recovery of Overpayment of Veteran's Benefits | ☐ 350 Motor Vehicle | ☐ 370 Other Fraud | **LABOR** | **SOCIAL SECURITY** | ☐ 480 Consumer Credit |
| ☐ 160 Stockholders' Suits | ☐ 355 Motor Vehicle Product Liability | ☐ 371 Truth in Lending | ☐ 710 Fair Labor Standards Act | ☐ 861 HIA (1395ff) | ☐ 485 Telephone Consumer Protection Act |
| ☐ 190 Other Contract | ☐ 360 Other Personal Injury | ☐ 380 Other Personal Property Damage | ☐ 720 Labor/Management Relations | ☐ 862 Black Lung (923) | ☐ 490 Cable/Sat TV |
| ☐ 195 Contract Product Liability | ☐ 362 Personal Injury - Medical Malpractice | ☐ 385 Property Damage Product Liability | ☐ 740 Railway Labor Act | ☐ 863 DIWC/DIWW (405(g)) | ☐ 850 Securities/Commodities/ Exchange |
| ☐ 196 Franchise | | | ☐ 751 Family and Medical Leave Act | ☐ 864 SSID Title XVI | ☐ 890 Other Statutory Actions |
| | | | | ☐ 865 RSI (405(g)) | ☐ 891 Agricultural Acts |
| **REAL PROPERTY** | **CIVIL RIGHTS** | **PRISONER PETITIONS** | ☐ 790 Other Labor Litigation | | ☐ 893 Environmental Matters |
| ☐ 210 Land Condemnation | ☐ 440 Other Civil Rights | **Habeas Corpus:** | ☐ 791 Employee Retirement Income Security Act | **FEDERAL TAX SUITS** | ☐ 895 Freedom of Information Act |
| ☐ 220 Foreclosure | ☐ 441 Voting | ☐ 463 Alien Detainee | | ☐ 870 Taxes (U.S. Plaintiff or Defendant) | ☐ 896 Arbitration |
| ☐ 230 Rent Lease & Ejectment | ☒ 442 Employment | ☐ 510 Motions to Vacate Sentence | | ☐ 871 IRS—Third Party 26 USC 7609 | ☐ 899 Administrative Procedure Act/Review or Appeal of Agency Decision |
| ☐ 240 Torts to Land | ☐ 443 Housing/ Accommodations | ☐ 530 General | | | ☐ 950 Constitutionality of State Statutes |
| ☐ 245 Tort Product Liability | ☐ 445 Amer. w/Disabilities - Employment | ☐ 535 Death Penalty | **IMMIGRATION** | | |
| ☐ 290 All Other Real Property | ☐ 446 Amer. w/Disabilities - Other | **Other:** | ☐ 462 Naturalization Application | | |
| | ☐ 448 Education | ☐ 540 Mandamus & Other | ☐ 465 Other Immigration Actions | | |
| | | ☐ 550 Civil Rights | | | |
| | | ☐ 555 Prison Condition | | | |
| | | ☐ 560 Civil Detainee - Conditions of Confinement | | | |

## V.  ORIGIN *(Place an "X" in One Box Only)*

☒ 1   Original
      Proceeding

☐ 2   Removed from
      State Court

☐ 3   Remanded from
      Appellate Court

☐ 4   Reinstated or
      Reopened

☐ 5   Transferred from
      Another District
      *(specify)*

☐ 6   Multidistrict
      Litigation -
      Transfer

☐ 8   Multidistrict
      Litigation -
      Direct File

## VI.  CAUSE OF ACTION

Cite the U.S. Civil Statute under which you are filing *(Do not cite jurisdictional statutes unless diversity)*:
42 U.S.C. § 1981

Brief description of cause:
Racial discrimination in violation of the Civil Rights Act of 1866, as amended

## VII.  REQUESTED IN COMPLAINT:

☒ CHECK IF THIS IS A **CLASS ACTION**
UNDER RULE 23, F.R.Cv.P.

**DEMAND $**

CHECK YES only if demanded in complaint:
JURY DEMAND:   ☒ Yes   ☐ No

## VIII.  RELATED CASE(S) IF ANY
*(See instructions):*

JUDGE   Hon. Victor A. Bolden

DOCKET NUMBER   3:18-cv-01602-VAB

| DATE | SIGNATURE OF ATTORNEY OF RECORD |
|---|---|
| 06/07/2019 | /s/Michael J. Reilly |

**FOR OFFICE USE ONLY**

RECEIPT #_____   AMOUNT_____   APPLYING IFP_____   JUDGE_____   MAG. JUDGE_____

# INSTRUCTIONS FOR ATTORNEYS COMPLETING CIVIL COVER SHEET FORM JS 44

### Authority For Civil Cover Sheet

The JS 44 civil cover sheet and the information contained herein neither replaces nor supplements the filings and service of pleading or other papers as required by law, except as provided by local rules of court. This form, approved by the Judicial Conference of the United States in September 1974, is required for the use of the Clerk of Court for the purpose of initiating the civil docket sheet. Consequently, a civil cover sheet is submitted to the Clerk of Court for each civil complaint filed. The attorney filing a case should complete the form as follows:

**I.(a)** **Plaintiffs-Defendants.** Enter names (last, first, middle initial) of plaintiff and defendant. If the plaintiff or defendant is a government agency, use only the full name or standard abbreviations. If the plaintiff or defendant is an official within a government agency, identify first the agency and then the official, giving both name and title.

**(b)** **County of Residence.** For each civil case filed, except U.S. plaintiff cases, enter the name of the county where the first listed plaintiff resides at the time of filing. In U.S. plaintiff cases, enter the name of the county in which the first listed defendant resides at the time of filing. (NOTE: In land condemnation cases, the county of residence of the "defendant" is the location of the tract of land involved.)

**(c)** **Attorneys.** Enter the firm name, address, telephone number, and attorney of record. If there are several attorneys, list them on an attachment, noting in this section "(see attachment)".

**II.** **Jurisdiction.** The basis of jurisdiction is set forth under Rule 8(a), F.R.Cv.P., which requires that jurisdictions be shown in pleadings. Place an "X" in one of the boxes. If there is more than one basis of jurisdiction, precedence is given in the order shown below.
United States plaintiff. (1) Jurisdiction based on 28 U.S.C. 1345 and 1348. Suits by agencies and officers of the United States are included here.
United States defendant. (2) When the plaintiff is suing the United States, its officers or agencies, place an "X" in this box.
Federal question. (3) This refers to suits under 28 U.S.C. 1331, where jurisdiction arises under the Constitution of the United States, an amendment to the Constitution, an act of Congress or a treaty of the United States. In cases where the U.S. is a party, the U.S. plaintiff or defendant code takes precedence, and box 1 or 2 should be marked.
Diversity of citizenship. (4) This refers to suits under 28 U.S.C. 1332, where parties are citizens of different states. When Box 4 is checked, the citizenship of the different parties must be checked**.** (See Section III below**; NOTE: federal question actions take precedence over diversity cases.**)

**III.** **Residence (citizenship) of Principal Parties.** This section of the JS 44 is to be completed if diversity of citizenship was indicated above. Mark this section for each principal party.

**IV.** **Nature of Suit.** Place an "X" in the appropriate box. If there are multiple nature of suit codes associated with the case, pick the nature of suit code that is most applicable. Click here for: Nature of Suit Code Descriptions.

**V.** **Origin.** Place an "X" in one of the seven boxes.
Original Proceedings. (1) Cases which originate in the United States district courts.
Removed from State Court. (2) Proceedings initiated in state courts may be removed to the district courts under Title 28 U.S.C., Section 1441.
Remanded from Appellate Court. (3) Check this box for cases remanded to the district court for further action. Use the date of remand as the filing date.
Reinstated or Reopened. (4) Check this box for cases reinstated or reopened in the district court. Use the reopening date as the filing date.
Transferred from Another District. (5) For cases transferred under Title 28 U.S.C. Section 1404(a). Do not use this for within district transfers or multidistrict litigation transfers.
Multidistrict Litigation – Transfer. (6) Check this box when a multidistrict case is transferred into the district under authority of Title 28 U.S.C. Section 1407.
Multidistrict Litigation – Direct File. (8) Check this box when a multidistrict case is filed in the same district as the Master MDL docket. **PLEASE NOTE THAT THERE IS NOT AN ORIGIN CODE 7.** Origin Code 7 was used for historical records and is no longer relevant due to changes in statue.

**VI.** **Cause of Action.** Report the civil statute directly related to the cause of action and give a brief description of the cause. **Do not cite jurisdictional statutes unless diversity.** Example: U.S. Civil Statute: 47 USC 553 Brief Description: Unauthorized reception of cable service

**VII.** **Requested in Complaint.** Class Action. Place an "X" in this box if you are filing a class action under Rule 23, F.R.Cv.P.
Demand. In this space enter the actual dollar amount being demanded or indicate other demand, such as a preliminary injunction.
Jury Demand. Check the appropriate box to indicate whether or not a jury is being demanded.

**VIII.** **Related Cases.** This section of the JS 44 is used to reference related pending cases, if any. If there are related pending cases, insert the docket numbers and the corresponding judge names for such cases.

**Date and Attorney Signature.** Date and sign the civil cover sheet.

## UNITED STATES DISTRICT COURT
## DISTRICT OF CONNECTICUT

MATTHEW WALKER,

                Plaintiff,

    v.

ACCENTURE PLC and ACCENTURE LLP

             Defendants.

Civil Action No.:

**COMPLAINT**

FOR EMPLOYMENT DISCRIMINATION

CLASS ACTION

JURY TRIAL DEMANDED

## COMPLAINT

Plaintiff Matthew Walker brings this action on behalf of himself and a class of similarly situated individuals to remedy pervasive, ongoing race discrimination by Defendants Accenture PLC and Accenture LLP (collectively, "Accenture"), and alleges as follows:

## NATURE OF THE ACTION

1.    Accenture PLC is a global management consulting and professional services company that is incorporated in Dublin, Ireland. It provides information technology and consulting services to customers worldwide. Accenture PLC owns and operates a number of subsidiaries in the United States, including, for example, Accenture LLP, Accenture Inc., and Accenture LLC. Accenture PLC employs almost 459,000 employees worldwide, approximately 51,800 of whom are located in the United States.

2.    Accenture's service offerings are consolidated into five separate businesses: (1) Accenture Consulting; (2) Accenture Technology; (3) Accenture Strategy; (4) Accenture Digital; and (5) Accenture Operations. Accenture Consulting utilizes employees with expertise and

industry knowledge to provide technology, business, and management consulting services to companies across a variety of industries. Within this business entity, Accenture Consulting operates a technology consulting segment designed to provide technical advice and solutions to businesses located across the U.S. by deploying consultants directly to client sites. Accenture Technology, on the other hand, focuses on providing technology services and solutions to businesses throughout the country, and employees are deployed directly to client sites to implement these services.

3.     Accenture engages in a pattern or practice of discrimination against non-South Asian applicants and employees. This results in a disproportionately low percentage of non-South Asians being hired in the U.S. by the company. The comparatively few South Asians who are hired by Accenture are routinely denied promotions and terminated at disproportionately high rates, as compared to their South Asian counterparts. As a result of these practices, certain divisions of Accenture's U.S. workforce are overwhelmingly South Asian. For example, while roughly 1-2% of the United States population, and about 12% of the relevant labor market, is South Asian, approximately 70% (or more) of Accenture Consulting and Accenture Technology's United States-based workforce is South Asian (primarily from India).[1] On information and belief, other divisions of the company are similarly disproportionate and subject to the same pattern or practice of discrimination. As discussed below, this grossly disproportionate workforce results from Accenture's intentional pattern and practice of employment discrimination against individuals who are not South Asian, including discrimination in job placement (*i.e.*,

---

[1] As used herein, "South Asian" refers to individuals who trace their ancestry to the Indian sub-continent. *See, e.g.*, *Fonseca v. Sysco Food Serv. of Az., Inc.*, 374 F.3d 840, 850 (9th Cir. 2004) ("Under 42 U.S.C. § 1981, discrimination based on ancestry or ethnic characteristics is prohibited" as discrimination based on race) (citation omitted).

hiring/staffing), promotion, and termination decisions.

4.      Accenture's employment practices violate the Civil Rights Act of 1866, as amended, 42 U.S.C. § 1981 ("§ 1981").[2] Plaintiff seeks, on his own behalf, and on behalf of a class of similarly situated individuals, declaratory, injunctive, and other equitable relief, compensatory and punitive damages, including pre- and post-judgment interest, attorneys' fees, and costs to redress Accenture's pervasive pattern and practice of discrimination.

## PARTIES

5.      Plaintiff Matthew Walker was born in the United States and is Caucasian. He is a resident of California. Plaintiff is a member of a protected class, as recognized by § 1981.

6.      Defendant Accenture PLC is a multinational professional services company that provides consulting, technology, strategy, digital, and operations services to clients located worldwide. Accenture PLC is incorporated in Dublin, Ireland and is a Fortune Global 500 company. Accenture PLC maintains approximately 48 offices in the United States and employs about 51,800 employees locally.

7.      Defendant Accenture LLP is an Illinois limited liability partnership and wholly-owned subsidiary of Accenture PLC. It was founded in 1989. Accenture LLP provides business services similar to Accenture PLC, including management consulting, technology, and outsourcing services to clients located across the United States.

## JURISDICTION

8.      This Court has subject matter jurisdiction pursuant to 28 U.S.C. § 1331 and 42 U.S.C. § 1981(a).

---

[2] Plaintiff will file a charge of discrimination with the EEOC and intends to amend the complaint to add Title VII claims upon receipt of his notice of right to sue from the EEOC.

9.      This Court has subject matter jurisdiction pursuant to 28 U.S.C. § 1332(d) as this matter is a class action with an amount in controversy of greater than $5 million, exclusive of interest and costs, and involves at least one class member who is a citizen of a state and is brought against a foreign corporation.

10.     This Court has personal jurisdiction over Accenture because it engages in continuous and systematic business contacts within the State of Connecticut and maintains a substantial physical presence in this State, including the operation of an office in Hartford, Connecticut.

## VENUE

11.     Venue is proper in the District of Connecticut pursuant to 28 U.S.C. § 1391 because Accenture resides in this District, conducts business in this District, and engaged in discriminatory conduct in this District. Additionally, Accenture engages in continuous and systematic business contacts within this District, and maintains a substantial physical presence in this District, including the operation of its office in Hartford, Connecticut.

## STATEMENT OF FACTS

*Overview of Accenture's Business Model*

12.     Accenture has 48 offices in the United States and employs approximately 51,800 employees domestically. Accenture earned about $41.0 billion in revenue in the past fiscal year, and derives approximately 45% of its revenue from the United States.

13.     Accenture contracts with U.S. companies to provide IT-related services. Once Accenture secures a contract with a client, it hires individuals to fill positions to service the client. Individuals must apply and interview for these positions. Once a position servicing a client comes to an end (or if an employee is removed from a position), individuals are placed in an unallocated

or unbillable status, also known as being "benched." Once on the bench, individuals must again seek new positions within Accenture, going through an application and interview process, just as external applicants must.

14.     Accenture posts available positions on two internal portals: MyScheduling and Careers Marketplace. Employees who are on the bench are encouraged to apply to open positions on these portals. After submitting an application, the employee's resume is reviewed by the client team that posted the open role to confirm the employee's qualification for the position. The client team then reaches out to the employee's Talent Fulfillment Specialist, an individual who works to match benched employees to open roles, to confirm the worker's availability and skill set. Talent Fulfillment Specialists thereby serve as a gatekeeper for benched employees, as their input can either streamline an employee for a certain role or block him or her from further consideration by Accenture.

*Overview of Accenture's Discriminatory Scheme*

15.     Accenture has engaged in a systematic, company-wide, pattern or practice of discrimination in favor of South Asians and against individuals who are not South Asian in hiring and employment decisions. Accenture's discriminatory preference for South Asians in hiring, staffing, promotions, and terminations is effectuated in at least four ways.

16.     First, Accenture engages in a practice of securing H-1B and L-1 visas for South Asian workers located overseas who will then be used to staff U.S. positions. The federal government annually awards 65,000 H-1B visas (plus an additional 20,000 for individuals with advanced degrees). These visas are awarded on a lottery basis. Given the cap on H-1B visas, companies compete to secure visas for prospective visa workers. Each year, companies submit H-1B visa petitions at the beginning of April for visas to be awarded later that year. H-1B visa

petitions must identify an actual job at a specific location that the prospective visa worker will fill if awarded a visa.

17.     To fulfill its employment preference for South Asians, Accenture seeks to maximize the number of visas it receives each year from the federal government. Accenture submits visa petitions for more positions than actually exist in the U.S. in order to maximize its chances of securing the highest number of available H-1B visas from the lottery process. In this way, Accenture has been able to secure visas for far more individuals than it actually has a present need for. For example, Accenture is consistently one of the top-10 H-1B visa recipients in the U.S., and from 2015 to 2018, Accenture received 20,378 new H-1B visas (or visa amendments) and 432 new L-1 visas (or visa amendments). Given that Accenture has employed between 43,000 and 51,800 employees during this time period, it could not possibly have positions for each of the thousands of individuals for whom it secures a visa each year. Rather, these individuals are placed in Accenture's inventory of visa workers for use on future projects in the U.S.

18.     The overwhelming majority of the individuals for whom Accenture secures visas are South Asian. While both individuals already located in the U.S. and foreign individuals who are visa-ready are considered for open positions in the U.S., as a matter of corporate practice, "visa ready" individuals are given preference. Accenture's explicit preference to staff visa holders in U.S. positions minimizes or eliminates competition for the jobs from non-South Asians residing in the U.S. (including both external applicants and existing employees seeking those positions). Moreover, certain job postings for positions within Accenture are specifically earmarked for Global Careers Program Candidates ("GCPs"), *i.e.*, visa holders, further limiting opportunities for non-South Asians.

19.     Accenture has attested to the importance of its continued use of visa workers in

the U.S. in its filings with the U.S. Securities and Exchange Commission:

> An important element of our global business model is the deployment of our employees around the world, which allows us to move talent [*i.e.*, visa workers] as needed. Therefore, if we are not able to deploy the talent we need because of increased regulation of immigration or work visas, including limitations placed on the number of visas granted, limitations on the type of work performed or location in which the work can be performed, and new or higher minimum salary requirements, it could be more difficult to staff our employees on client engagements and could increase our costs.

Accenture Holdings plc, Annual Report (Form 10-K) at 11 (Aug. 31, 2018).

20.     Second, on information and belief, when conducting local hiring (*i.e.*, hiring of individuals who already reside within the U.S.) Accenture gives preference to South Asian candidates. For instance, Accenture's recruiters disproportionately seek out and recruit South Asian candidates. Accenture then gives South Asian candidates preference over comparably or better qualified non-South Asian candidates. Accenture also gives preference to South Asian and Indian contract workers, to the exclusion of non-South Asian and non-Indian job applicants and existing employees.

21.     Third, because of its discriminatory preference for South Asians, Accenture promotes South Asians at disproportionately high rates compared to non-South Asians. Prior to 2016, annual employee appraisals, post-project feedback, and accolades were entered into Accenture's MyPerformance platform. In January 2016, Accenture introduced a new platform called Performance Achievement and began offering quarterly appraisals. Within this platform, employees receive an appraisal rating of either "Need Improvement," "Continue to Grow," or "Promoted." Promotions at Accenture are tied to an employee's appraisal, and employees receiving strong appraisals from their managers are more likely to receive a promotion from Accenture. Because of Accenture's preference for South Asians, these individuals are regularly awarded higher appraisal scores, compared to their non-South Asian colleagues, and as a result,

South Asians are regularly promoted at substantially higher rates than non-South Asians. This results in diminished career prospects for non-South Asian individuals, among other harms. Moreover, because of its discriminatory preferences, the vast majority of Accenture's managerial and supervisory positions in the U.S. are filled by South Asian individuals.

22.     Fourth, Accenture terminates non-South Asians at disproportionately high rates compared to South Asians. Accenture has a policy to terminate employees who are on the bench for more than approximately forty days. Because South Asians are given preference for new positions, and these individuals are used to displace non-South Asians on existing projects, non-South Asians are disproportionately relegated to the bench and unable to secure new positions within Accenture. This, among other things, leads to their termination at disproportionate rates compared to South Asians.

23.     The composition of Accenture's U.S. workforce reflects the result of its discriminatory scheme. For example, at least 70% (if not more) of Accenture Consulting and Accenture Technology's United States-based workforce is South Asian (primarily from India), as is the vast majority of its managerial and supervisory-level staff. On information and belief, other Accenture divisions are similarly disproportionate.  By contrast, during the 2010 census, all Asian subgroups combined made up 4.8% of the U.S. population. South Asians made up 1-2% of the U.S. population and about 12% of the U.S. IT industry.

*Plaintiff's Experiences*

24.     Mr. Walker is a highly skilled and experienced performance engineer with considerable academic and work experience. He holds a B.S. in Accounting and Information Systems from San Jose State University and has over ten years of professional experience. Over the course of his career, Mr. Walker has worked for a variety of information technology

companies as a performance engineer, including in lead roles, and specializes in performance testing, monitoring, and diagnostics, and the resolution of performance-related issues.

25.     Mr. Walker worked for Accenture from November 2011 through at least June 2015. He was employed as an application performance consultant and was a member of the company's technology consulting segment. In this role, Mr. Walker traveled to various client sites across the U.S. from his home base of San Francisco, California and was responsible for identifying, diagnosing, and resolving performance issues relating to clients' applications. During his tenure with the company, Mr. Walker serviced Accenture clients Ascension Health, Target, Warner Brothers, Merk & Co., Qualcomm, Covered California, Best Buy, Los Angeles County, Chase Bank, and Apple. Mr. Walker reported to different clients partners on each project, the vast majority of whom were South Asian. Moreover, approximately 70% to 80% of all Accenture employees assigned to the same projects as Mr. Walker were also South Asian.

26.     Mr. Walker performed well in his application performance consultant role. For instance, after joining Accenture, Mr. Walker was first assigned a position servicing Ascension Health in St. Louis. The client was impressed by Mr. Walker's performance and later asked for him to return for subsequent projects. In addition, when staffed on the Covered California project, Mr. Walker consistently worked extra hours each week to ensure the development of California's health insurance marketplace stayed on track. However, despite his strong performance as an application performance consultant, Mr. Walker was never promoted by Accenture during his 3.5 years with the company. Accenture did not promote Mr. Walker because of its pattern or practice of discrimination, discussed above.

27.     Given the nature of Mr. Walker's consulting role, each position he was selected for by Accenture was of a limited duration, typically lasting between a few weeks and a few

months. When Mr. Walker's projects came to an end, he was placed in an unallocated and unbillable status referred to as being "benched." While on the bench, Mr. Walker was required to locate and apply to open positions within the company on Accenture's internal staffing portal called MyScheduling. Mr. Walker was also assigned a Talent Fulfillment Specialist whose primary responsibility was to help connect Mr. Walker to open positions matching is skill set. Each time Mr. Walker was on the bench, he diligently applied to open positions listed on MyScheduling and reached out to his Talent Fulfillment Specialist for support. However, Mr. Walker often received no response to his applications from Accenture and his Talent Fulfillment Specialist was difficult to reach and provided him with little assistance in finding a new role.

28.     In June 2015, Mr. Walker received a call from his Career Counselor at Accenture, who informed him of his termination. She stated that Mr. Walker was being terminated due to his prolonged bench period and lack of billable hours, but that he would be marked as eligible for rehire in Accenture's files. This explanation for his termination was pretextual. The true reason for his termination was Accenture's pattern or practice of discrimination, discussed above.

29.     Between 2016 and 2019, Mr. Walker applied to more than twenty different positions with Accenture on its Alumni Network site for former employees, but Accenture failed to hire him each time because of the company's systematic and continuous discriminatory scheme.

30.     For instance, Mr. Walker applied to the following positions (a non-exhaustive list) on Accenture's Alumni Network site:

- May 7, 2016: Performance Engineering & Testing Manager

- June 3, 2016: Test Analyst

- June 13, 2016: Software Engineering DevOps Consulting Manager

- June 29, 2016: Software Engineering Manager

- September 2016: Test Engineering Specialist

- October 13, 2016: Performance Testing -Tech Arch Consultant

- October 13, 2016: Performance Diagnostics - Tech Arch Consultant

- October 20, 2016: Diagnostics Engineer - Associate Manager

- December 3, 2016: Performance Engineer - Tech Arch Associate Manager

- March 2, 2017: Test Engineering Senior Analyst

- June 17, 2017: Performance Diagnostics Architect/Manager

- August 7, 2017: Technology Architecture Manager

- August 7, 2017: Performance Diagnostics Engineer - Associate Manager

- September 24, 2017: Diagnostic Engineer

- September 14, 2018: Performance Diagnostic Engineer

- October 10, 2018: Performance Engineer

- November 15, 2018: Test QA Specialist - Testing Engineer

- November 15, 2018: Test Automation Engineer

- November 15, 2018: Performance Engineering Manager

- March 30, 2019: Performance Tester

- May 2, 2019: Test Engineering Associate Manager

31.     Mr. Walker was well qualified for these roles, given his over ten years of experience in performance engineering and the fact that he held a similar role at Accenture for over 3.5 years. However, for all but one of these positions, Accenture did not contact Mr. Walker for an interview. Instead, Mr. Walker received generic rejection emails from the company which noted that either his "skills and experience [did] not match Accenture's current needs" or that the

11

Accenture had "decided to pursue other candidates." Moreover, on multiple occasions, Mr. Walker received no response at all from Accenture, other than an email confirming the receipt of his application.

32.     Mr. Walker also reached out to Kira Cartier (Alumni Recruiting), Laura Burke (Senior Recruiter), and Richard Freeman (North America Alumni Recruiting) on four occasions between December 2016 and August 2017 to inquire about open positions matching his performance engineering skill set. However, on all four occasions, he received a generic email response from these recruiters stating, "I've reviewed your resume and searched internally for suitable rehire opportunities, however at this time, we do not have any open positions that meet your skills and career objectives." Accenture did not hire Mr. Walker because of its pattern or practice of discrimination, discussed above.

## CLASS ACTION ALLEGATIONS

33.     Plaintiff brings this Class Action pursuant to Federal Rule of Civil Procedure 23(a), (b)(2), (b)(3), and (c)(4), seeking injunctive, declaratory, equitable, and monetary relief for Accenture's systematic pattern and practice of discrimination against non-South Asian individuals in the United States. This action is brought on behalf of the following class:

> All individuals who are not of South Asian race who applied for positions with (or within) Accenture in the U.S. and were not hired, who were employed by Accenture but not promoted, and/or who Accenture involuntarily terminated.

34.     Members of the class are so numerous and geographically dispersed across the United States that joinder is impracticable. While the exact number of class members is unknown to Plaintiff, it is believed to be in the thousands. Furthermore, class members are readily identifiable from information and records in Accenture's possession.

35.     There are numerous questions of law and fact common to members of the class. Among the common questions of law or fact are:  (a) whether Accenture has intentionally

discriminated against individuals who are not of South Asian race in its hiring, promotion, and termination decisions; (b) whether Accenture has intentionally favored South Asians in hiring, promotions, and terminations and/or whether Accenture has intentionally disfavored non-South Asians in hiring, promotion/demotion, and termination decisions; (c) whether Accenture's policy and practice of relying on South Asian visa and local workers is intentionally discriminatory; (d) whether Accenture has violated § 1981; (e) whether equitable and injunctive relief is warranted for the class and (f) whether compensatory and/or punitive damages are warranted for the class.

36.     Plaintiff's claims are typical of the class. Members of the class were damaged by the same discriminatory practices employed by Accenture.

37.     Plaintiff will fairly and adequately protect the interest of other class members because he has no interest that is antagonistic to or which conflicts with those of any other class member, and Plaintiff is committed to the vigorous prosecution of this action and has retained competent counsel experienced in class litigation to represent him and the class.

38.     Plaintiff and the class he seeks to represent have suffered substantial losses in earnings and other employment benefits and compensation as a result of Accenture's actions.

39.     Class certification is appropriate pursuant to Federal Rule of Civil Procedure 23(b)(2) because Accenture has acted and/or refused to act on grounds generally applicable to the class, making declaratory and injunctive relief appropriate with respect to Plaintiff and the class as a whole. Members of the class are entitled to declaratory and injunctive relief to end Accenture's systematic, common, uniform, unfair, and discriminatory policies and practices.

40.     Class certification is appropriate pursuant to Federal Rule of Civil Procedure 23(b)(3) for determination of the claims of individual class members because the issue of liability is common to the class and the common nucleus of operative facts forms the central issue, which

13

predominates over individual issues of proof. The primary question common to the class is whether Accenture operates under a pattern or practice of discrimination against non-South Asians in its employment practices. This questions are central to the case and predominates over individual issues among the members of the proposed class. Class certification under Rule 23(b)(3) would be superior to other methods for fair and efficient resolution of the issues because certification will avoid the need for repeated litigation by each individual class member. The instant case will be eminently manageable as a class action. Plaintiff knows of no difficulty to be encountered in the maintenance of this action that would preclude its maintenance as a class action.

41.     In the alternative, class certification is appropriate pursuant to Federal Rule of Civil Procedure 23(c)(4) to decide whether Accenture has adopted a systemic pattern or practice of racial discrimination in hiring and employment decisions. Certification under this rule is also appropriate to determine classwide damages, including punitive damages, and injunctive relief.

### COUNT I
**Disparate Treatment on the Basis of Race in Violation of 42 U.S.C. § 1981**
**(On behalf of Plaintiff and the Class)**

42.     Plaintiff re-alleges each preceding paragraph as though fully set forth herein.

43.     This claim is brought by Plaintiff on behalf of himself and the class.

44.     Throughout the class liability period, Accenture has engaged in a pattern or practice of discriminating against individuals who are not of South Asian race by: (a) knowingly and intentionally favoring individuals of South Asian race in job placement (*i.e.*, hiring/staffing), promotion, and termination decisions, (b) knowingly and intentionally disfavoring individuals who are not of South Asian race (including Plaintiff) in job placement (*i.e.*, hiring/staffing), promotion, and termination decisions, (c) knowingly and intentionally creating and maintaining an overwhelmingly South Asian workforce in the United States.

14

45.     As a direct and proximate result of Accenture's intentional discrimination, Plaintiff and class members have been denied employment and positions within Accenture, have been denied promotions, and/or have been terminated.

46.     Accenture's actions constitute unlawful discrimination on the basis of race in violation of 42 U.S.C. § 1981.

### PRAYER FOR RELIEF

WHEREFORE, Plaintiff and the class pray for relief as follows:

a.      Certification of the case as a class action pursuant to Fed. R. Civ. P. 23;

b.      Designation of Plaintiff as representative of the class;

c.      Designation of Plaintiff's counsel as counsel for the class;

d.      A declaratory judgment that the practices complained of herein are unlawful and violate the Civil Rights Act of 1866, 42 U.S.C. § 1981;

e.      A permanent injunction against Defendants and their officers, agents, successors, employees, representatives, and any and all persons acting in concert with them, from engaging in unlawful policies, practices, customs, and usages set forth herein;

f.      An Order requiring Defendants to adopt a valid, non-discriminatory method for hiring, promotion, termination, and other employment decisions;

g.      An Order requiring Defendants to post notices concerning its duty to refrain from discriminating against employees on the basis of race;

h.      Award Plaintiff and the Class damages – including (without limitation) compensatory, exemplary, and punitive damages for the harm they suffered as a result of Defendant's violations of § 1981;

i.      Award Plaintiff and the Class pre- and post-judgment interest at the prevailing rate on the compensatory damages as a result of Defendants' discriminating against them in violation of § 1981;

j.      Award Plaintiff and the Class front- and back-pay, reinstatement, and such other equitable relief as the Court deems just and appropriate;

k.      Award reasonable attorneys' fees, expert witness fees, expenses, and costs of this action and any related administrative actions; and

l.      Award Plaintiff and the Class such other relief as this Court deems just and appropriate.

**JURY TRIAL DEMAND**

Pursuant to Fed. R. Civ. P. 38, Plaintiff and the Class respectfully demand a trial by jury on all issues properly triable by a jury in this action.


DATED:    June 7, 2019                          Respectfully submitted,

                                                By: /s/Michael J. Reilly
                                                Michael J. Reilly
                                                Cicchiello & Cicchiello LLP
                                                364 Franklin Avenue
                                                Hartford, CT 06114
                                                Telephone: (860) 296-3457
                                                Facsimile: (860) 296-0676
                                                Email: mreilly@cicchielloesq.com

                                                Daniel Kotchen (*pro hac vice* application forthcoming)
                                                Michael von Klemperer (*pro hac vice* application forthcoming)
                                                Lindsey Grunert (*pro hac vice* application forthcoming)
                                                **KOTCHEN & LOW LLP**
                                                1745 Kalorama Road NW, Suite 101
                                                Washington, DC 20009
                                                Telephone: (202) 471-1995
                                                Facsimile: (202) 280-1128
                                                Email: dkotchen@kotchen.com;
                                                mvk@kotchen.com;
                                                lgrunert@kotchen.com

                                                *Attorneys for Plaintiff and Putative Class*