# UNITED STATES DISTRICT COURT
# DISTRICT OF CONNECTICUT

| | |
|---|---|
| MATTHEW WALKER, *Individually and on Behalf of All Others Similarly Situated*,<br><br>　　　　　　Plaintiff,<br>　v.<br><br>ACCENTURE PLC and ACCENTURE LLP<br><br>　　　　　　Defendants. | No. 3:19-cv-00888-JAB<br><br>June 21, 2019 |

## PLAINTIFF'S MEMORANDUM IN SUPPORT OF HIS MOTION TO CONSOLIDATE

### Cross-filed in *Bayat v. Accenture Corporation LLC*, No. 3:18-01602-VAB

Michael von Klemperer (*phv*10140)
Daniel Kotchen (*phv* forthcoming)
**Kotchen & Low LLP**
1745 Kalorama Road NW, Suite 101
Washington, DC 20009
Telephone: (202) 471-1995
Facsimile: (202) 280-1128
Email: dkotchen@kotchen.com;
mvk@kotchen.com

Michael J. Reilly (ct28651)
**Cicchiello & Cicchiello LLP**
364 Franklin Avenue
Hartford, CT 06114
Telephone: (860) 296-3457
Facsimile: (860) 296-0676
Email: mreilly@cicchielloesq.com

*Attorneys for Plaintiff and Putative Class*

**TABLE OF CONTENTS**

TABLE OF CONTENTS ............................................................................................................. I
TABLE OF AUTHORITIES ...................................................................................................... II
MEMORANDUM IN SUPPORT OF PLAINTIFF'S MOTION TO CONSOLIDATE ............... 1
    I.      BACKGROUND ................................................................................................. 1
          A.      Accenture's Common Discriminatory Scheme .......................................... 1
          B.      The *Bayat* and *Walker* Actions ................................................................ 4
    II.     LEGAL STANDARD .......................................................................................... 7
    III.    ARGUMENT ....................................................................................................... 8
          A.      *Bayat* and *Walker* Present Common Questions of Law and Fact ............... 9
          B.      Consolidation Would Promote Efficiency, Reduce Costs, and Serve the
                Ends of Justice ......................................................................................... 10
    IV.    CONCLUSION .................................................................................................. 12

# TABLE OF AUTHORITIES

**Cases**

*Biochem Pharma, Inc. v. Emory Univ.*, 148 F. Supp. 2d 11 (D.D.C. 2001) .................................. 8

*Buchanan v. Tata Consultancy Servs.*, No. 15-cv-01696, 2017 U.S. Dist. LEXIS 212170 (N.D. Cal. Dec. 27, 2017) ................................................................................................................... 3

*Chin v. Port Auth.*, 685 F.3d 135 (2d Cir. 2012) ................................................................. 6, 7, 11

*Consorti v. Armstrong World Indus.*, 72 F.3d 1003 (2d Cir. 1995) ................................................ 9

*Cooper v. Fed. Reserve Bank*, 467 U.S. 867 (1984) ..................................................................... 10

*Devlin v. Transp. Commc'ns Int'l Union*, 175 F.3d 121 (2d Cir. 1999) ......................................... 8

*EEOC v. Fliedermaus, LLC*, 77 F. Supp. 2d 460 (S.D.N.Y. 1999) .............................................. 10

*Epic Sys. Corp. v. Lewis*, 138 S. Ct. 1612 (2018) ......................................................................... 11

*Flanagan v. N.Y.C. Dep't of Educ.*, No. 13 Civ. 8456, 2016 U.S. Dist. LEXIS 102722 (S.D.N.Y. Aug. 4, 2016) ........................................................................................................... 10, 11

*In re Air Crash Disaster at Fla. Everglades on Dec. 29, 1972*, 549 F.2d 1006 (5th Cir. 1977) .... 7

*International Brotherhood of Teamsters v. United States*, 431 U.S. 324 (1977) ....................... 5, 6

*Internet Law Library, Inc. v. Southridge Capital Mgmt. LLC*, 208 F.R.D. 59 (S.D.N.Y. 2002) ... 9

*Johnson v. Celotex Corp.*, 899 F.2d 1281 (2d Cir. 1990) ........................................................... 7, 8

*Malcolm v. Nat'l Gypsum Co.*, 995 F.2d 346 (2d Cir. 1993) .......................................................... 9

*Metro-North Commuter R.R. Co.*, 267 F.3d 147 (2d Cir. 2001) ..................................................... 6

*Patterson v. County of Oneida*, 375 F.3d 206 (2d Cir. 2004) ........................................................ 9

*Reynolds v. Barrett*, 685 F.3d 193 (2d Cir. 2012) .......................................................................... 6

*Ruiz v. Cnty. of Rockland*, 609 F.3d 486 (2d Cir. 2010). ............................................................... 6

*United Mine Workers of Am. v. Gibbs*, 383 U.S. 715 (1966) ........................................................ 7

*United States v. City of N.Y.*, 717 F.3d 72 (2d Cir. 2013) ............................................................ 11

*Young v. City of Augusta*, 59 F.3d 1160 (11th Cir. 1995) .............................................................. 8

*Zubulake v. UBS Warburg LLC*, 217 F.R.D. 309 (S.D.N.Y. 2003) ............................................. 11

**Statutes**

42 U.S.C. § 1981 ................................................................................................................... 5

42 U.S.C. § 2000e-5, et seq. ................................................................................................ 10

**Rules**

Fed. R. Civ. P. 42(a) .................................................................................................... 1, 7, 8

**Treatises**

MANUAL FOR COMPLEX LITIGATION (FOURTH) ...................................................... 5, 7, 8

MOORE'S FEDERAL PRACTICE ........................................................................................ 8, 9

WRIGHT & MILLER, FEDERAL PRACTICE AND PROCEDURE ............................................. 7

**MEMORANDUM IN SUPPORT OF PLAINTIFF'S MOTION TO CONSOLIDATE**

To promote efficiency and serve the interests of justice, Plaintiff Mathew Walker, joined by Plaintiff Atila Bayat, moves to consolidate a putative employment-discrimination class action, *Walker v. Accenture LLP*, No. 3:19-00888-JAB (D. Conn.), with a related discrimination case, *Bayat v. Accenture Corp. LLC*, No. 3:18-01602-VAB (D. Conn.) pursuant to Fed. R. Civ. P. 42(a). Both cases challenge Accenture's discriminatory preference for staffing positions in certain divisions with South Asian individuals (primarily visa holders from India), to the detriment of non-South Asian individuals. Because the cases present the same legal and factual issues, the circumstances warrant consolidation and would promote efficiency and serve the ends of justice.

If consolidation is granted, counsel for Mr. Walker will assume representation of Mr. Bayat, and the Plaintiffs would move to file a consolidated amended complaint. In the consolidated amended complaint, Mr. Bayat will assert pattern-or-practice claims (alongside Mr. Walker) on behalf of the class and will serve as a class representative going forward. This motion is being cross-filed concurrently in Mr. Bayat's case.

## I.   BACKGROUND

This motion concerns two employment-discrimination lawsuits currently pending in this District, which arise from the same course of conduct by Defendants Accenture LLP and Accenture PLC (collectively, "Accenture").[1]

### A.   Accenture's Common Discriminatory Scheme

As the *Walker* Complaint explains, Accenture is a multinational corporation that provides consulting services in the United States, including information technology ("IT") consulting

---

[1] Accenture PLC is a holding company that operates through its subsidiaries, including Accenture LLP. Accenture PLC, *Directors' Report and Consolidated Financial Statements for the Year Ended August 31, 2018* at 9, https://investor.accenture.com/~/media/Files/A/Accenture-IR-V2/annual-shareholder-meeting/2019/accenture-fiscal-2018-irish-statutory-accounts.pdf; *see also id.* at 86 (listing subsidiaries).

1

through its Accenture Consulting and Accenture Technology divisions. *Walker* Complaint ¶¶ 1-2 (ECF No. 1). Rather than maintaining inhouse IT staff, Accenture's clients contract with Accenture to provide information technology resources and services. *Id.* ¶¶ 3, 13. In the course of this arrangement Accenture's employees are staffed to a client for a particular project position, often working at the client's offices rather than Accenture's. *Id.*

To fill a position servicing a client, Accenture considers both internal candidates (existing Accenture employees) and external candidates (applicants to Accenture), selecting only one person to fill a given position on the project. *Id.* ¶ 13. Given the project-based nature of Accenture's business, an employee's position may come to an end, at which point the employee is placed on Accenture's "bench" until he finds a new position. *Id.* ¶¶ 13-14. Benched employees devote their time to finding a new position within Accenture, competing against other internal candidates and external candidates. *Id.* This process generally proceeds like a traditional job search, with the benched employee submitting resumes and interviewing within Accenture. *Id.* ¶ 14. If an Accenture employee is unable to find a new position and remains on the bench too long, he is terminated. *Id.* ¶ 22.

Throughout this process, Accenture disproportionately selects South Asian individuals to fill open positions, and Non-South Asians are correspondingly not hired, not promoted, benched, and terminated involuntarily. *Id.* ¶¶ 15-23. As a result, Accenture has cultivated workforces within certain divisions that are at least 70% South Asian, compared to around 12% of the relevant labor market. *Id.* ¶ 23. This disparity stems from Accenture's pattern and practice of discrimination, which favors South Asians over non-South Asians at every juncture. *Id.* ¶¶ 15-23.

Although Accenture's discriminatory scheme is egregious, it is not unique. The federal government has recognized that using the visa system to achieve a discriminatory objective is

illegal and is investigating discrimination against U.S. workers "in hiring, firing, or recruitment." Press Release, DOJ Civil Rights Div., *Justice Department Cautions Employers Seeking H-1B Visas Not to Discriminate Against U.S. Workers* (**Ex. 1**) ("U.S. workers should not be placed in a disfavored status").

And several of Accenture's IT-consulting competitors have faced lawsuits over similar biases, which manifest themselves in hiring, promotion, staffing, and termination decisions that disproportionately affect non-South Asians. *E.g.*, *Buchanan v. Tata Consultancy Servs.*, No. 15-cv-01696, 2017 U.S. Dist. LEXIS 212170, at *2-3, 7 (N.D. Cal. Dec. 27, 2017) (certifying a terminations class, denying summary judgment, rejecting Daubert challenge to Dr. Neumark's statistics and noting that at Tata "the involuntary termination rate for benched non-South Asian employees is 10.6% as compared to less than 1% for benched South Asian employees"); Report of Dr. David Neumark at ¶¶ 5-10 (ECF No. 88-2), *Koehler v. Infosys Techs. Ltd. Inc.*, 2:13-cv-885 (E.D. Wis. Oct. 17, 2016), (summarizing findings regarding extraordinary workforce disparities not attributable to chance[2]). Like Accenture, these companies rely heavily on the visa system to fulfill their preference to staff positions with South Asian workers. *E.g.*, *Buchanan*, 2017 U.S. Dist. LEXIS 212170, at *4 ("During the class period, foreign visa workers … represented between 75% and 89% of TCS's workforce in the United States"); Pls.' Mot. for Class Cert. at 9 (ECF No.

---

[2] Dr. Neumark found that from 2009 through 2015, 89.39% of Infosys' U.S. workforce was South Asian, compared to between 11% and 20% of the relevant labor market, depending on the market definition used. *Id.* ¶ 6. And 57.74% of Infosys' Indian employees were promoted, compared to 20.85% of its non-Indian employees. *Id.* ¶ 9. Infosys' new hires were approximately 75% South Asian, although South Asians only comprised between 11% and 20% of the relevant labor market. *Id.* ¶ 10. Finally, the rate of company-initiated separations was 23% for non-South Asians versus 11% for South Asians. *Id.*

3

88), *Koehler v. Infosys Techs. Ltd. Inc.*, 2:13-cv-885 (E.D. Wis. Oct. 17, 2016) (discussing Infosys' use of the visa system).

### B. The *Bayat* and *Walker* Actions

Mr. Bayat and Mr. Walker were both victims of Accenture's discriminatory preference for staffing U.S. positions with South Asian employees. In September 2018, Mr. Bayat filed suit against his former employer. *See* Complaint (ECF No. 1), *Bayat v. Accenture Corp.*, No. 3:18-01602-VAB (D. Conn. Sept. 24, 2018) (hereinafter "*Bayat* Complaint" (**Ex. 2**)). Since that time, he has proceeded *pro se* against Accenture's attorneys from the law firm of Winston & Strawn, *see Bayat* Docket, No. 3:18-01602-VAB, which employs 800 lawyers in sixteen offices around the world.[3]

As of May 10, Accenture had produced 3,000 pages of documents responsive to the Court's Initial Discovery Protocols for Employment Cases Alleging Adverse Action (hereinafter "Protocol"),[4] while largely ignoring the documents that Mr. Bayat requested that are specifically relevant to his claims. *See* Defendant's Discovery Letter at 1 (ECF No. 34), *Bayat v. Accenture Corp.*, No. 3:18-01602-VAB (D. Conn. May 10, 2019) (hereinafter "Def.'s Letter" (**Ex. 3**)) (explaining Accenture's productions thus far); *see also id.* at 2-4 (providing overview of its lack of response to each of Mr. Bayat's document requests). The Protocol, however, is not tailored to cases alleging systematic discrimination. *See* Protocol at 1 (exempting class actions from the Protocol); *see also id.* at 4-5 (listing documents that defendants must produce); *infra* pp. 5-6 & n. 6 (discussing the differences in proving individual versus systematic discrimination). And

---

[3] *See Winston & Strawn LLP, Firm Profile*, CHAMBERS ASSOCIATE, https://www.chambers-associate.com/winston-strawn/true-picture/3677/1##firm-profile (last accessed June 20, 2019).

[4] *See* Court's Initial Discovery Protocols for Employment Cases Alleging Adverse Action (ECF No. 8), *Bayat v. Accenture Corp.*, No. 3:18-01602-VAB (D. Conn. Sept. 24, 2018).

Accenture's objections ignore Mr. Bayat's allegations of widespread discrimination. *See* Def.'s Letter at 2-4 (repeatedly invoking the individual nature of Mr. Bayat's case and refusing to provide any discovery relevant to allegations of systemic discrimination). Otherwise, little discovery and no substantive motions practice have been completed by either party in the *Bayat* action. *See* Discovery Order at 4-6 (ECF No. 36), *Bayat v. Accenture Corp.*, No. 3:18-01602-VAB (D. Conn. May 24, 2019) (hereinafter "*Bayat* Discovery Order," attached in Appendix of Unreported Cases).

Subsequently, on June 7, 2019, Plaintiff Matthew Walker filed the instant class action on behalf of himself and other similarly situated non-South Asian Accenture employees, former employees, and applicants. *See Walker* Compl. In line with the procedure suggested in the Manual for Complex Litigation,[5] Mr. Walker designated his case as related to *Bayat v. Accenture Corp.*, No. 3:18-01602-VAB, which is pending before the Honorable Victor A. Bolden.

The *Walker* Complaint alleges that, in violation of 42 U.S.C. § 1981, Accenture engages in a comprehensive pattern or practice of discrimination against non-South Asian individuals when selecting employees to fill positions in the United States. *Walker* Compl. ¶¶ 3, 42-46. Mr. Walker has filed an EEOC charge concerning similar violations of Title VII, which he intends to assert upon receiving notice of his right to sue. *Id.* ¶ 4 n.2.

Mr. Walker and the putative class are availing themselves of the pattern-or-practice framework set forth by the Supreme Court in *International Brotherhood of Teamsters v. United States*, 431 U.S. 324 (1977). "In contrast to individual disparate treatment claims" under the

---

[5] The Manual for Complex Litigation advises that "[a]ll related civil cases pending in the same court should initially be assigned to a single judge to determine whether consolidation, or at least coordination of pretrial proceedings, is feasible and is likely to reduce conflicts and duplication." MANUAL FOR COMPLEX LITIGATION (FOURTH) § 20.11.

*McDonnell Douglas* model,[6] "'[p]attern-or-practice disparate treatment claims focus on allegations of widespread acts of intentional discrimination.'" *Reynolds v. Barrett*, 685 F.3d 193, 203 (2d Cir. 2012) (quoting *Robinson v. Metro-North Commuter R.R. Co.*, 267 F.3d 147, 158 (2d Cir. 2001)). Private pattern-or-practice claims can only be brought in class cases. *See Chin v. Port Auth.*, 685 F.3d 135, 146-47 (2d Cir. 2012).

A *Teamsters* lawsuit proceeds in two phases. *Reynolds*, 685 F.3d at 203. In the liability phase, plaintiffs establish that discrimination is the defendant's standard operation procedure, which can be proved by statistics alone or with additional anecdotal evidence. *Id.* The defendant can rebut plaintiffs' prima facie case by showing that plaintiffs' statistics are inaccurate or insignificant. *Id.* If plaintiffs prevail, they proceed to a streamlined remedial phase where each class member is entitled to "an inference that any particular employment decision, during the period in which the discriminatory policy was in force, was made in pursuit of that policy." *Teamsters*, 431 U.S. at 362.

Mr. Bayat (like Mr. Walker) alleges that the vast majority of his colleagues and managers were Indian and that Accenture preferred individuals of Indian descent when staffing projects. *Bayat* Compl. at 19-21. He alleges that Accenture discriminated against him based on his race and national origin when it failed to promote him and ultimately terminated him. *Id.* He alleges that this type of treatment was common at Accenture, as many of his non-South Asian colleagues faced a similar course of discrimination. *Id.* at 19-21, 25. However, Mr. Bayat cannot avail himself of

---

[6] Under the *McDonnell Douglas* framework the individual plaintiff is required to show that "(1) he is a member of a protected class; (2) he was qualified for the position he held; (3) he suffered an adverse employment action; and (4) the adverse action took place under circumstances giving rise to [an] inference of discrimination." *Ruiz v. Cnty. of Rockland*, 609 F.3d 486, 492 (2d Cir. 2010). "If the plaintiff establishes a prima facie case of discrimination, the burden shifts to the employer to come forward with a legitimate, nondiscriminatory reason for the adverse employment action. If the employer does so, the burden then returns to the plaintiff to demonstrate that race was the real reason for the employer's adverse action." *Reynolds*, 685 F.3d at 202 (citation omitted).

the pattern-or-practice framework, because he is currently proceeding as a standalone plaintiff (on a *pro se* basis). *See Chin*, 685 F.3d at 146-47.

## II.     LEGAL STANDARD

Under Rule 42(a), "[i]f actions before the court involve a common question of law or fact, the court may: (1) join for hearing or trial any or all matters at issue in the actions; (2) consolidate the actions; or (3) issue any other orders to avoid unnecessary cost or delay." Fed. R. Civ. P. 42(a). The rule authorizes cases to be consolidated for trial, pretrial, or both. MANUAL FOR COMPLEX LITIGATION (FOURTH) § 11.631 (Rule 42(a) "authorizes the [court] to consolidate, for trial or pretrial, actions pending in the same court involving common questions of law or fact if it will avoid unnecessary cost or delay."). 9 WRIGHT & MILLER, FEDERAL PRACTICE AND PROCEDURE § 2382 (1971) ("Consolidation need not be only for trial. Consolidation of actions in the pretrial stage will, under many circumstances, be a desirable administrative technique and is within the power of the court."). "The trial court has broad discretion to determine whether consolidation is appropriate." *Johnson v. Celotex Corp.*, 899 F.2d 1281, 1284-85 (2d Cir. 1990).

Consolidation of related actions is favored. *See In re Air Crash Disaster at Florida Everglades on December 29, 1972*, 549 F.2d 1006, 1014 (5th Cir. 1977) (finding that consolidating actions where appropriate can help avoid needless duplication of time, effort and expense on the part of the parties and the court in discovery and at trial); *see also United Mine Workers of Am. v. Gibbs*, 383 U.S. 715, 724 (1966) ("Under the Rules, the impulse is toward entertaining the broadest possible scope of action consistent with fairness to the parties; joinder of claims, parties and remedies is strongly encouraged."). "District court judges . . . have been urged to make good use

of Rule 42(a) in order to expedite the trial and eliminate unnecessary repetition and confusion." *Young v. City of Augusta*, 59 F.3d 1160, 1169 (11th Cir. 1995) (citation omitted).

### III.   ARGUMENT

The Court should consolidate the *Bayat* and *Walker* cases under Rule 42 because they challenge the same conduct by the same defendant and consolidation would promote efficiency and serve the interests of justice. If the Court grants the instant Motion, (1) counsel for Mr. Walker will assume representation of Mr. Bayat; and (2) the Plaintiffs will move to file a consolidated amended complaint. In the consolidated amended complaint, Mr. Bayat will assert pattern-or-practice claims on behalf of the class and will seek to serve as a class representative going forward.

To consolidate cases under Rule 42(a), the cases should share "a common question of law or fact," Fed. R. Civ. P. 42(a), and "[i]n assessing whether consolidation is appropriate in given circumstances, a district court should consider both equity and judicial economy." *Devlin v. Transp. Commc'ns Int'l Union*, 175 F.3d 121, 130 (2d Cir. 1999).

Although Rule 42(a) requires a common question of law or fact, common questions "do not have to predominate." MOORE'S FEDERAL PRACTICE § 42.10[1][a] (3d ed.). Courts "[q]uite frequently" consolidate actions "of a 'like nature.'" *Id.* For example, "[c]lass actions [may] be consolidated with cases brought by opt-outs or other individual plaintiffs," MANUAL FOR COMPLEX LITIGATION (FOURTH) § 11.631, and "[c]onsolidation of tort actions sharing common questions of law and fact is commonplace," *Johnson*, 899 F.2d at 1284. Consolidation is particularly appropriate where "two cases each involve review of the same underlying decision." *See Biochem Pharma, Inc. v. Emory Univ.*, 148 F. Supp. 2d 11, 12 (D.D.C. 2001).

Courts have consistently "taken the view that considerations of judicial economy favor consolidation," which "'expedite[s] trial and eliminate[s] unnecessary repetition and confusion." *Devlin*, 175 F.3d at 130 (quoting *Consorti v. Armstrong World Indus.*, 72 F.3d 1003, 1006 (2d Cir.

8

1995)). Consolidation eliminates "the waste associated with duplicative discovery and multiple trials, and the danger of inconsistent verdicts." *Internet Law Library, Inc. v. Southridge Capital Mgmt. LLC*, 208 F.R.D. 59, 61 (S.D.N.Y. 2002) (citation omitted).

And "[c]ourts [are] most likely to approve consolidation when they find that it serves the interests of justice," MOORE'S FEDERAL PRACTICE § 42.10[3][a] (3d ed.), because "[t]he benefits of efficiency can never be purchased at the cost of fairness." *Malcolm v. Nat'l Gypsum Co.*, 995 F.2d 346, 350 (2d Cir. 1993).

### A. *Bayat* and *Walker* Present Common Questions of Law and Fact

Because *Walker* and *Bayat* present the same legal and factual issues, they should be consolidated. As an initial matter, Mr. Bayat is a putative class member in the *Walker* action—providing both factual and legal overlap. And the cases challenge the same conduct by the same defendant.[7] Mr. Bayat, Mr. Walker, and the putative class are all victims of Accenture's preference for staffing projects in certain divisions with South Asians. *Walker* Compl. ¶¶ 1-3, 15-23; *Bayat* Compl. at 19-21, 28-29. Mr. Bayat worked in a division at issue in the class action suit during the class period, was subject to the same promotion, project-staffing, benching, and termination policies that favor South Asian employees, and suffered the same adverse employment actions at issue in the class action. *Walker* Compl. ¶¶ 15-23, 33-41; *Bayat* Compl. at 9, 12, 16, 19-21, 28-29. These allegations pose the same ultimate question—whether the challenged conduct constitutes intentional discrimination, in violation of federal civil rights laws. *See Patterson v. County of Oneida*, 375 F.3d 206, 225 (2d Cir. 2004) (noting that the same substantive standards govern Title

---

[7] Although the Actions have different named Defendants ("Accenture PLC and Accenture LLP" in *Walker* vs. "Accenture Corporation LLC" in *Bayat*) the difference is only cosmetic. Accenture PLC is simply a holding company for its co-defendant Accenture LLP, which is Mr. Bayat's former employer and the defendant in his case. *See Bayat* Answer at 1 (**Ex. 4**) (noting that Accenture LLP is the appropriate defendant in that matter). A consolidated complaint would eliminate this discrepancy by dropping "Accenture Corporation LLC" as a defendant.

9

VII and § 1981 claims). And, ultimately, the consolidated amended complaint will raise identical causes of action.

Because these cases "involve the same relationship between the Individual Plaintiffs and the Defendants, the same incidents, and by and large, the same legal theories" they should be consolidated. *EEOC v. Fliedermaus, LLC*, 77 F. Supp. 2d 460, 464-66 (S.D.N.Y. 1999) (consolidating Title VII case with Title VII and § 1981 case); *see also Flanagan v. N.Y.C. Dep't of Educ.*, No. 13 Civ. 8456, 2016 U.S. Dist. LEXIS 102722, at *10, 11 (S.D.N.Y. Aug. 4, 2016) (consolidating Title VII cases that "allege many of the same acts of racial discrimination by the same actors at the same school during the same time period as in this case."). Aggregating similar employment-discrimination claims is particularly appropriate. *See Fliedermaus*, 77 F. Supp. 2d at 466 (consolidating employment discrimination claims); *Flanagan.*, 2016 U.S. Dist. LEXIS 102722, at *9-15 (consolidating employment discrimination claims); *Cooper v. Fed. Reserve Bank*, 467 U.S. 867, 881 (1984) (holding that district courts have discretion to coordinate adjudication of Title VII claims in pattern-or-practice cases); *cf.* 42 U.S.C. § 2000e-5(f)(1) (providing mutual intervention rights to private citizens and the government in Title VII cases).

### B. <u>Consolidation Would Promote Efficiency, Reduce Costs, and Serve the Ends of Justice</u>

Because the *Walker* action will proceed whether or not Mr. Bayat can join, consolidation would prevent substantial duplicative work in discovery, motions practice, and trial. This would save time and money for the parties and the Court. And Accenture would not incur any prejudice from consolidation, as it will need to litigate allegations of systematic discrimination in the *Walker* class action regardless.

Absent consolidation, Mr. Bayat would be left to adjudicate his claims alone while the class action proceeded without him, which would impose three disadvantages on Mr. Bayat. First,

he would be unable to avail himself of the pattern-or-practice method of proof, even though his Complaint clearly alleges that he was the victim of a pattern of systematic discrimination at Accenture. *See Chin*, 685 F.3d at 147. But his allegations are better addressed under the *Teamsters* framework, because he alleges that discrimination "directed at a class of victims" was "the company's standard operating procedure," rather than an "intent to discriminate against one person," which *McDonnell Douglas* is designed to address. *United States v. City of N.Y.*, 717 F.3d 72, 83 (2d Cir. 2013). Second, Mr. Bayat would be denied access to the broader discovery that will be available in the class action, which will be more relevant to his particular claims. *See Bayat* Discovery Order at 4-5 (invoking proportionality to limit the scope of discovery that Mr. Bayat can obtain). Third, proceeding collectively with other affected employees in the class action would lessen the impact of the resource disparities between Mr. Bayat, an individual proceeding *pro se*, and Accenture, a multinational corporation. *See Epic Sys. Corp. v. Lewis*, 138 S. Ct. 1612, 1633 (2018) (Ginsburg, J., dissenting) ("[a] single employee . . . is disarmed in dealing with an employer . . . [b]ut by joining together with others similarly circumstanced, employees can gain effective redress" because "there is strength in numbers"); *see also Zubulake v. UBS Warburg LLC*, 217 F.R.D. 309, 318 (S.D.N.Y. 2003) (noting that resource disparities between individuals and large companies poses risk of "undermin[ing] the 'strong public policy favoring resolving disputes on their merits'").

Although consolidation would require vacating the schedule in *Bayat* to accommodate the more recently filed class action, it would streamline rather than complicate the case. *See Flanagan*, 2016 U.S. Dist. LEXIS 102722, at *11-12 ("although it is true that consolidation will delay the resolution of the [] defendants' liability vis à vis Mr. Flanagan, even without consolidation the defendants would still be defending against congruent claims on nearly identical facts").

Moreover, the *Bayat* action has yet to advance significantly. Document productions remain outstanding, discovery was recently extended to September, depositions have yet to occur, and no dispositive motions have been filed. *Bayat* Discovery Order at 5-6. Finally, the Court has left open the possibility of re-opening discovery after the current round of production is complete in September. *Id.* at 5. No efforts would be wasted if Mr. Bayat joined the class case and the benefits of consolidation would substantially outweigh any slight delay.

## IV.    CONCLUSION

For the foregoing reasons, *Walker v. Accenture LLP*, No. 3:19-00888-JAB should be consolidated with *Bayat v. Accenture Corporation LLC*, No. 3:18-01602-VAB in the *Bayat* docket, for all purposes. The schedule in *Bayat* should be vacated and a conference promptly arranged to discuss consolidated proceedings.

DATED:   June 21, 2019                                   Respectfully submitted,

                                                         PLAINTIFF MATTHEW WALKER

                                                         By: /s/Michael von Klemperer
                                                         Michael von Klemperer (*phv*10140)
                                                         Daniel Kotchen (*phv* forthcoming)
                                                         **KOTCHEN & LOW LLP**
                                                         1745 Kalorama Road NW, Suite 101
                                                         Washington, DC 20009
                                                         Telephone: (202) 471-1995
                                                         Facsimile: (202) 280-1128
                                                         Email: dkotchen@kotchen.com;
                                                         mvk@kotchen.com; lgrunert@kotchen.com

                                                         Michael J. Reilly (ct28651)
                                                         **Cicchiello & Cicchiello LLP**
                                                         364 Franklin Avenue
                                                         Hartford, CT 06114
                                                         Telephone: (860) 296-3457
                                                         Facsimile: (860) 296-0676
                                                         Email: mreilly@cicchielloesq.com


                                                         *Attorneys for Plaintiff and Putative Class*

**CERTIFICATE OF SERVICE**

I hereby certify that on the above date a copy of the foregoing document was filed electronically and served by mail on anyone unable to accept electronic filing. Notice of this filing will be sent by e-mail to all parties by operation of the Court's electronic filing system or by mail to anyone unable to accept electronic filing as indicated on the Notice of Electronic Filing. Parties may access this filing through the Court's CM/ECF system.

In addition, a copy of the foregoing document was served on the following individuals by email:

Atila Bayat
atila.bayat@gmail.com

*Plaintiff Pro Se*

Brian A. Smith
Winston and Strawn LLP
BASmith@winston.com

Daniel J. Fazio
Winston & Strawn LLP
DFazio@winston.com

Johanna S. Katz
Pullman & Comley
Jkatz@pullcom.com

Joshua A. Hawks-Ladds
Pullman & Comley
Jhawks-ladds@pullcom.com

*Counsel for Accenture*

By: /s/Michael von Klemperer