Exhibit 4

UNITED STATES DISTRICT COURT
DISTRICT OF CONNECTICUT

| | |
|---|---|
| ATILA BAYAT, | ) |
| | ) CIVIL ACTION |
| Plaintiff, | ) NO. 3:18-CV-01602-VAB |
| | ) |
| | ) |
| vs. | ) |
| | ) November 21, 2018 |
| ACCENTURE CORPORATION LLC, | ) |
| | ) |
| Defendant. | ) |

## ANSWER

Defendant Accenture LLP (incorrectly named as Accenture Corporation LLC) ("Accenture"), by and through its undersigned counsel, Winston & Strawn LLP, submits herein its Answer ("Answer") to the Complaint filed by Plaintiff Atila Bayat ("Bayat" or "Plaintiff").

1. Plaintiff resides at the following location: 329 Windtree Street, Torrington C.T. 06790.

**RESPONSE:** Accenture denies knowledge or information sufficient to form a belief as to the truth of the allegations.

2. Defendant(s) reside(s) at the following location [Attach additional sheets if more space is required]: Accenture LLC. 161 North Clark Street, Chicago IL 60601 / Attorney for Accenture LLC. / Accenture One Financial Plaza Hartford CT 06103.

**RESPONSE:** Accenture denies the allegations, except admits that Accenture LLP has offices at 161 North Clark Street, Chicago, Illinois, and One Financial Plaza, Hartford, Connecticut.

3. This action is brought pursuant to [Check all spaces that apply to the type of claim(s) you wish to assert against the Defendant(s)]: Title VII of the Civil Rights Act of 1964, as amended, 42 U.S.C. §§ 2000e, et seq., for employment discrimination on the basis of race, color, religion, sex or national origin. Jurisdiction is specifically referred on this Court by 42 U.S.C. § 2000e-5(f). Equitable and other relief is sought under 42 U.S.C. § 2000e-5(g) and the Civil Rights Act of 1991, 42 U.S.C. § 1981a. Age Discrimination in Employment Act of 1967, as amended, 29 U.S.C. §§ 621, et seq., for employment discrimination based upon age. Jurisdiction is alleged pursuant to 28 U.S.C. §§ 1331,

1337, and/or 1343. Equitable and other relief is sought under 29 U.S.C. §§ 626(b) and (c), or §§633a(b) and (c). My Year of Birth is: 1966.

**RESPONSE:** Accenture denies the allegations, except avers that Plaintiff purports to bring this action on the bases alleged in Paragraph 3 and denies knowledge or information sufficient to form a belief as to Plaintiff's year of birth.

4.  The acts complained of in this suit concern check all spaces that are applicable to your claim(s)]: (B)Termination of my employment. I was terminated from my employment on the following date: 9/16/16. (C) Failure to promote me. I was refused a promotion on the following date(s): April 2016. (D) Other acts as specified below: More than one discriminatory event, including Title IX Retaliation Complaint. Additional pages attached.

    **RESPONSE:** Accenture denies the allegations.

5.  The conduct of the Defendant(s) was discriminatory because it was based upon: race ☒, age ☒, national origin ☒. [Please check all applicable bases for your claim of discrimination and explain further, if necessary]: Additional pages attached.

    **RESPONSE:** Accenture denies the allegations.

6.  The facts surrounding my claim of employment discrimination are as follows [Attach additional sheets, if necessary]:

    **RESPONSE:** Accenture states that the paragraph does not contain allegations as to which a response is required. To the extent that a response is required, Accenture denies the allegations.

7.  The approximate number of persons who are employed by the Defendant employer I am suing is: 400,000 estimated.

    **RESPONSE:** Accenture denies the allegations.

8.  The alleged discrimination occurred on or about the date(s) or time period: 2015-2016.

    **RESPONSE:** Accenture denies the allegations.

9.  I filed charges with the: Equal Employment Opportunity Commission; Connecticut Commission on Human Rights and Commission.

    **RESPONSE:** Accenture admits the allegations.

10. The Equal Employment Opportunity Commission issued a Notice of Right to Sue letter (copy attached), which I received on or about the following date: July 02, 2018.  [NOTE: If you filed charges with the EEOC or CHRO, you MUST attach a copy of the Notice of Right to Sue letter for this Court to consider your claim(s).  Failure to do so may result in delaying consideration of your claim(s).]

**RESPONSE:** Accenture denies knowledge or information sufficient to form a belief as

to when Plaintiff received a right to sue letter.

11. The EEOC or the CHRO determined that there was no probable cause to believe that discrimination occurred.  My reason for questioning that determination are as follows [Attach additional sheets, if necessary]: [...] not request evidence from me.  I have evidence to support the claims in this complaint [...] supply all of the evidence of discrimination in support of this application [...] investion [*sic*] without evidence and input from me.  Additional sheets attached.

**RESPONSE:** Accenture denies the allegations, except denies knowledge or information

sufficient to form a belief as to the determinations of the Connecticut Commission on Human

Rights and Opportunities and the Equal Employment Opportunity Commission.

12. WHEREFORE, Plaintiff(s) pray(s) that:  The Court grant such relief as may be deemed appropriate, including [NOTE:  While all the forms of relief listed below may not available in a particular action, you should place a check to each form of relief you seek.]:

**RESPONSE:** Accenture denies that Plaintiff is entitled to the requested relief, or to any

other relief in connection with this action.

13. Injunctive orders (specify the type of injunctive relief sought): Backpay;  Monetary damages (specify the type(s) of monetary damages sought; Other (specify the nature of any additional relief sought, not otherwise provided for on this form).  I hereby DO demand a trial by jury.

**RESPONSE:** Accenture denies that Plaintiff is entitled to the requested relief, or to any

other relief in connection with this action.

14. Plaintiff, Atila Bayat, brings the following proceeding Pro Se, brings this action pursuant to Title VII of the Civil Rights Act of 1964, as amended, 42 U.S.C. §2000e et seq., § 7703(b)(2), and the Age Discrimination in Employment Act, to remedy acts of employment discrimination and retaliation perpetrated against him with allegations

against Defendants Accenture, LLP, Accenture Inc., Accenture LLC and Accenture Ltd. (collectively "Accenture"); a foreign corporation. In support thereof alleges the following - with additional pages to the form "US District Court Complaint for Employment Discrimination";

**RESPONSE:** Accenture denies the allegations, except avers that Plaintiff purports to bring this action on the bases alleged in Paragraph 14.

15. Plaintiff contends that Accenture managers and staff discriminated against him by passing over him for promotion and salary review, and for more than fifty employment positions because of his race (US Citizen) and age (over 40). Plaintiff further asserts that management retaliated against him for having complained about such discrimination, created a hostile work environment for him, caused him to suffer emotionally and professionally, failed to provide reasonable accommodation, punished him for raising concerns about disparity of treatment of US workers, causing work induced maladies, and finally, terminated him from employment, and continued to retaliate with further discrimination causing him post-employment incapacity.

**RESPONSE:** Accenture denies the allegations.

16. The following numbered contents from 1-13 are attachments (Additional Sheets) to the "Complaint for Employment Discrimination" form filed on this day. Each number corresponds to the form, and the explanations are provided herein, when they are not complete on the District Court form.

**RESPONSE:** Accenture states that the paragraph does not contain allegations as to which a response is required. To the extent that a response is required, Accenture denies the allegations.

17. I, Atila Bayat ("Complainant") submit the following in this matter:

**RESPONSE:** Accenture states that the paragraph does not contain allegations as to which a response is required. To the extent that a response is required, Accenture denies the allegations.

18. Atila Bayat is a resident in the State of Connecticut. Atila Bayat is a US Citizen by birth in the United States.

**RESPONSE:** Accenture denies knowledge or information sufficient to form a belief as to the truth of the allegations.

4

19. This is an employment discrimination action alleging Defendant Accenture is in violation of the Employment and Age Discrimination titles ("Title VII"), and a tort action alleging unlawful retaliation by the same company.  Accenture is a foreign corporation affecting commerce with a focus on Business and Management Consulting outsourcing, Human Resources, Information Technology, Tax, Finance and corporate life in the global regions it does business.

**RESPONSE:** Accenture states that the allegations are legal conclusions as to which no response is required. To the extent that a response is required, Accenture denies the allegations.

20. Accenture is a professional services company serving clients in various industries and in geographic regions, including North America, Europe and Growth Markets.  The Company provides management and technology consulting services.  Its segments include Communications, Media and Technology; Financial Services; Health and Public Service; Products, and Resources.  The Communications, Media & Technology segment serves communications, electronics, technology, media and entertainment industries.  The Financial Services segment serves banking, capital markets and insurance industries.  The Health & Public service segment serves healthcare payers and providers, and government departments and agencies, public service organizations, educational institutions and non-profit organizations.  The Products segment serves a set of interconnected consumer-relevant industries.  The Resources industries segment serves chemicals, energy, forest products, metals and mining, utilities and related industries.

**RESPONSE:**  Accenture admits the allegations.

21. In February 2015, Accenture hired Plaintiff Atila Bayat for the position of "Team Lead of Software Engineering" which required me, *inter alia,* to perform project, team, and consulting services to its clients globally and services company wide as needed.

**RESPONSE:**   Accenture denies the allegations, except admits that Accenture hired Plaintiff in February 2015.

22. I was recruited by Accenture and was offered a full-time employment contract package in February 2015.

**RESPONSE:**  Accenture denies the allegations.

23. My start date was February 27th 2015 after completing their background investigation through HireRight Corporation to verify my experience, completed the company new joiner orientation, all onboarding documents, job aids, and contact information.  My initial probationary period included training in sensitive working situations, ethics, workplace harassment prevention and discrimination, all of which I completed and received the highest possible scores.  I am not going to accept discrimination by

Accenture, especially in light of the intensive training which is mandatory, and the mandatory policy of the company as well.

**RESPONSE:** Accenture denies the allegations, except admits that Accenture hired Plaintiff in February 2015, that HireRight, LLC conducted a background check, that his start date was on or about February 27, 2015, and that Plaintiff underwent orientation and training thereafter.

24. My contract of employment specifies that I was a full-time salaried employee in the North American Technology Delivery Center, *not* a temporary contract worker *nor* temporary consultant.

   **RESPONSE:** Accenture denies the allegations, except admits that Plaintiff's offer letter from Accenture specifies that Plaintiff would be a full-time employee.

25. I was employed to report to work in the Hartford CT region, the regional office closest to my residence. I was hired to report to work from my local Hartford office on consulting assignments whether they were local, national, or international. My offer of employment agreement (*Attachment A*) specifies Hartford is my local office. I worked on consulting engagements for Accenture locally in Connecticut and out of state, in New York and Pennsylvania. My title was Software Engineering Team Lead (level 9), with eligibility for promotion in 4 months up to 1 year to level 8, associate manager.

   **RESPONSE:** Accenture denies the allegations, except denies knowledge or information sufficient to form a belief as to Plaintiff's residence and admits that Plaintiff's offer letter from Accenture specified Hartford as his local office.

26. Upon information and belief, Defendants maintain control, oversight, and direction over the operations of the office in which Plaintiff worked, in Connecticut. This court has subject matter jurisdiction over this action pursuant to 28 U.S.C. §§ 1331 and 1343.

   **RESPONSE:** Accenture states that the allegations are legal conclusions as to which no response is required. To the extent that a response is required, Accenture denies the allegations, except does not contest that this Court has subject matter jurisdiction over this action.

27. Defendant Accenture, LLP is an Illinois limited liability partnership. At all times relevant to this complaint, Accenture Inc. has engaged in business affecting commerce, and has been an employer within the meaning of the Civil Rights Act of 1964.

**RESPONSE:** Accenture denies the allegations, except admits that Accenture LLP is an Illinois limited liability partnership.

28. Defendant Accenture Inc. is a Delaware Corporation.  At all times relevant to this complaint, Accenture Inc. has engaged in business affecting commerce, and has been an employer within the meaning of the Civil Rights Act of 1964.

**RESPONSE:** Accenture denies the allegations, except admits that Accenture Inc. is a Delaware Corporation.

29. Defendant Accenture Ltd., incorporated in Ireland, is the parent company of Defendant Accenture LLP, Accenture Inc. and Accenture LLC.  At all times relevant to this complaint, Accenture Inc. has engaged in business affecting commerce, and has been an employer within the meaning of the Civil Rights Act of 1964.

**RESPONSE:** Accenture denies the allegations.

30. Accenture does not identify a headquarters office, instead describing itself as a global corporation.  The company has several "hub" offices, and Accenture Hartford office is the office I was assigned.

**RESPONSE:** Accenture denies the allegations.

31. Venue is proper in this Court because Accenture Hartford office is where I worked.

**RESPONSE:** Accenture states that the allegations are legal conclusions as to which no response is required. To the extent that a response is required, Accenture does not contest that venue is proper in this Court.

32. Plaintiff has satisfied the procedural and administrative requirements for proceeding under Title VII.  Plaintiff filed a timely written Charge of Discrimination with the U.S. Equal Opportunity Commission ("EEOC").  On June 26, 2016, the EEOC issued a right to sue letter to Plaintiff, which was received July 2, 2016.  Plaintiff will have commenced this action within 90 days of his receipt of the notice of right to sue.

**RESPONSE:** Accenture states that the allegations are legal conclusions as to which no response is required, except denies knowledge or information sufficient to form a belief as to when Plaintiff received a right to sue letter.

33. During my employment, I repeatedly brought to the attention of managers and personnel concerns about H1B, and B1 personnel on US based projects, foreign labor preference versus US workers and placement on its projects to the detriment of US Citizen employees, and the lack of collaboration on the part of management to place US workers on projects in the US, where it does most of its business. From the day I raised the incidents of disparity of treatment and discrimination last May 2016, my job at Accenture was in jeopardy. I was retaliated against with the termination of my job, with discrimination, prejudice and malice.

**RESPONSE:** Accenture denies the allegations.

34. 4D (the acts complained of in this suit - other): In an ongoing and continuous manner, Accenture representatives responded with indifference, and retaliation in many forms including job termination despite my good performance evaluations, project services performed, and a disproportionate concern to remove me from the company in light of my reports of these facts, and ex post facto performance reports to the EEOC long after I received my entire HR file post-employment which did not include any unfair performance evaluation ex post facto. The enjoining retaliation complaint I make includes the effort of Accenture against me to deny me a normal salary review several months before discriminatory termination, no project placement on any client projects conservatively within my range of expertise (I selected dozens at and near my 15-20 years level of experience), and disbarring me from completing the training tracks which I was in, and which foreign nationals were given preference. All said evidence is in my possession, with witnesses and testimony to be supplied in court.

**RESPONSE:** Accenture denies the allegations.

35. I was terminated on September 7th 2016 via conference call the day before my 50th birthday, and was told I would be paid through my last official day being Friday September 16. Contrary to what the Separation release agreement which was sent to me states, I was told my last day would be end of week September 16, however, the laptop had to be returned before that day. In other words, I had only 5 business days after September 7 to find and apply for any job at Accenture, for which I had no representation or recommendations from my Senior Manager, TFS, CC, or HR, and the company policy is that it does not provide references post termination, nor did any of them supply any support. The only system I could access for this purpose was the Careers Marketplace system, an external facing application system, the equivalent of non-employee access. The very position and title I held, "Software Engineering Team Lead" for the Hartford region was available in the same Career Marketplace system, I applied for more than 5 positions that last week and did not receive a phone call back or interview. *The position I already held was open the entire time I was being terminated from it.*

**RESPONSE:** Accenture denies the allegations, except admits that Plaintiff could access the Careers Marketplace System.

36. After the September 7 conference call concluded, I received an email that informed me my last date would be September 16th. I quote from my separation package materials verbatim, and contrary to the sworn statement by an attorney and Accenture HR Management:

**RESPONSE:** Accenture denies the allegations.

37. "If you reside in CT, Accenture is required to pay employees their last paycheck on the day after their last day worked, which would be Friday, September 16th, 2016."

**RESPONSE:** Accenture admits the allegations.

38. 6: Facts surrounding my claim:

**RESPONSE:** Accenture states that the paragraph does not contain allegations as to which a response is required. To the extent that a response is required, Accenture denies the allegations.

39. Plaintiff is a male resident of Connecticut residing in Torrington. I was employed by Accenture from February 2015 until the termination of employment effective September 2016. Accenture is a Technology and Management Service, Business Process outsourcing, insourcing of foreign labor, offshoring of business process company incorporated in Ireland (formerly Anderson Consulting), employing over 400,000 persons. Although Accenture is incorporated overseas, it employs nearly 50,000 in the US, a fraction of its operations whereby it gains more than 50% of its revenues. As a global company, many of its standard business operations within the umbrella of Accenture are already outsourced to Argentina, Mexico, Philippines, and primarily in India. This fact was unknown to me prior to my employment, and took a few months to learn and understand and communicate those facts.

**RESPONSE:** Accenture denies the allegations, except denies knowledge or information sufficient to form a belief as to Plaintiff's residency, admits that Plaintiff was employed by Accenture from February 2015 until September 2016, and admits that Accenture is a global company.

40. On various occasions during my employment, I informed key Accenture personnel about compliance with Visa regulations, and with Title VII compliance with Federal and State laws. Accenture declined to bring its policies and procedures into compliance and retaliated against me for expressing these complaints about Accenture's compliance. Retaliation occurred over the duration of my employment from 2016 to termination.

**RESPONSE:**    Accenture   denies   the   allegations   and   denies   that   its   policies   and

procedures are not in compliance with federal and state laws.

41. I have more than 16 years of Technology and Management Consultant experience.   I
    underwent a background check by Accenture prior to employment at Accenture.   I
    attended "experienced worker" meetings in the Experienced Hire Community of Practice
    (COP) at Accenture, which I was admitted to attend since I am an experienced worker in
    this field.   I have deep previous working knowledge and experience in the industries of
    Financial Services, Health and Public Service, Resources, Software Development
    Lifecycle, Software Testing and Quality Assurance, and Technology.   I have various
    Platform and Lifecycle experiences on numerous Technological Infrastructures.    In
    addition, I underwent numerous training programs at Accenture as well.   I took upwards
    of 100 Accenture training courses and completed specific Accenture trainings above what
    was mandatory including PPSM, Capital Markets, Banking, ITIL, Test Design, and the
    Big Data academy for which I received flairs on my company profile, and a training
    transcript in my possession which I can provide on request.   Statistics would demonstrate
    that I was in the top 1-5% of all employees that completed as much training in the course
    of employment, demonstrating my commitment to staying current and relevant with
    continuing education in the workforce.

    **RESPONSE:**  Accenture denies the allegations, except denies knowledge or information

sufficient to form a belief as to Plaintiff's previous working knowledge and experience, admits

that HireRight, LLC conducted a background check, and admits that Plaintiff underwent training

courses at Accenture.

42. Race and my Status/National Origin as a US Citizen was clearly a factor in my
    termination and dismissal.   *In my local Hartford region, none of the account managers
    would place me on a project.*   Most of the local Hartford region account managers were
    of Indian origin.   There are hundreds of foreign nationals of India in the local region, and
    with H1B Visa contractors I spoke with recently that were on a short-term rotational
    basis, they are gainfully employed in my local region, and *not one of them was
    terminated, while I was.*

    **RESPONSE:**  Accenture denies the allegations.

43. This employer Accenture wanted to remove me, and in fact removed me because I am a
    US Citizen, and they know I am a US Citizen, and my local HR Manager herself Camille
    Lee knew I was a US Citizen.   She knows this, because she asked and I replied in an
    email to her query.   The greatest majority of employees at Accenture are from India and
    are India based.   There is no disputing this fact, as I know from my meetings and
    conferences at Accenture in which Indian regional directors reported the fact on video
    conference these same factual demographics.   As I state here, my Accenture supervisors

10

and managers, at their discretion, with HR, conspired to terminate my position since I raised the matter of the projects that were suited for me, were being filled by foreign nationals from India primarily and exclusively.   Race was clearly a factor in my termination, and my national origin is USA.   My CC (Career Counselor) Connie Price also refused to provide me with a promotion, or a raise.   She insulted and disparaged me that I would not get a review for a raise until the end of 2016, when I was no longer employed at Accenture.

**RESPONSE:** Accenture denies the allegations.

44. My TFS (Talent Fulfillment Specialist) Rokia Wagner warned me and others on a conference call in July to August of 2016 that there would be an increase of workers on the bench (bench: unassigned to a project) in August and September of 2016, which was patently false.   It was the smallest bench in my knowledge of working at Accenture from the beginning of my employment.   Attached are the listing of resources on a weekly unassigned call in April 2015 with more than 200 persons, and in August 2016, there were less than 20 persons on the bench conference call.   (**Attachments B**).

**RESPONSE:**  Accenture denies the allegations, except denies knowledge or information sufficient to form a belief as to whether Rokia Wagner stated on a conference call in July to August of 2016 that there would be an increase of workers on the bench and as to whether it was the smallest bench of which Plaintiff was aware during his employment with Accenture.

45. Some of the foreign workers I spoke with in person were not authorized to work in the time that they came to work from India for Accenture.   This was something they explained to me as they were H1B Visa workers.   They started several months earlier than they were supposed to legally start, as they told me.   I did not mention all the details to management about those episodes though I had regular conversations with my colleagues from India, as this was alarming.   However, I was very concerned when I encountered a large group of foreign workers from India on my one-year anniversary company event held in Hartford by Accenture.   This was very disconcerting to me, as I was one US Citizen in a strict minority of US Citizen workers in Hartford CT in that event late February 2016.   There was a vivid contrast of a minority of US workers at the meeting, and I was in that minority.

**RESPONSE:**   Accenture denies the allegations and denies that Plaintiff experienced unlawful discrimination at Accenture.

46. My termination was conspiratorially coordinated by my TFS, CC, and Senior Manager the day I reported the H1B inquiry incidents to them in May-June 2016.   It had nothing to do with my conduct or performance at work.   I was retaliated by Accenture with

11

termination, when I raised the issue of these incidents. I was treated differently than my foreign national counterparts from India, and was not placed on a project. No foreign workers from India were subjected to this kind of discriminatory treatment. Just US Citizens like myself that are dedicated to the profession were losing their jobs. I was terminated and dismissed by my employer which employs primarily Indian H1B Visa contractors, on a short-term basis, which enables lucrative profit margins. This Accenture practice is advantageous to firms that are offshore global companies, which import labor at competitive rates, against their US American counterparts, to avoid paying taxes and social security. All of my local account managers in my home state of Connecticut refused to place me on a project as a result of my simple conveyance that these projects I had requested to interview on, were deliberately seeking H1B Visa contractors that had consequently lower contract and wage rates, which I did not. I was treated differently than the foreign workers and contractors at Accenture with H1B Visas in the Hartford region which had a significantly lower median age range, less experienced than me, and they did not get terminated. I was treated differently than other Accenture foreign national employees, because no other foreign workers were subjected to this termination and treatment.

**RESPONSE:** Accenture denies the allegations.

47. I complained internally at Accenture, and was consequently terminated. It is not right that I was treated differently than any other worker at Accenture, just by the fact that I am a US Citizen, my national origin, and age. It is wrong. Even in light of significant outsourcing deals that Accenture has, it is wrong to treat me differently than others based on my status as a US Citizen since I choose to work in the very nation of my origin.

**RESPONSE:** Accenture denies the allegations.

48. As a full-time employee (W2) of Accenture the responsibility for putting me on projects rests with Accenture and its employees charged with this particular task, NOT with me!! Therefore, Accenture should NOT have terminated me ... instead it should have terminated those employees for not placing me on projects! No one in leadership was terminated at Accenture for such a cause, to my knowledge.

**RESPONSE:** Accenture denies the allegations.

49. My Senior Manager Julianne Castellani explicitly stated on the September 7 conference call in which an HR representative Diana Joseph was present (not my local HR Manager Camille Lee), that I had only 1 week to secure a role in the "Careers Marketplace" of Accenture, an external facing system. Careers Marketplace is a public system which is not the standard Accenture system for identifying chargeable roles to apply for when you are an Accenture employee. She further clarified that I would no longer be able to apply for any jobs in the MyScheduling system, the internal facing system, since I was being terminated. The Senior Manager Castellani stated that I could not use "MyScheduling" (Internal Accenture system) to apply for a new role at Accenture, even though I had an interview for a role the day before termination was announced to me, and that I did not

even receive confirmation whether I was selected for that role, since it was pending. Moreover, the same manager refused to acknowledge the hours I accrued on a local nonprofit project which my local HR manager Camille Lee asked me to support - before the termination. As far as "my long-term failure to become staffed on a chargeable project" my employment agreement contract does not state that I am responsible to place myself on any contract or Accenture engagement. I apply for the roles using the MyScheduling platform, and follow their process to get staffed. It is not a self-staffing process, in which an employee assigns themselves to a project. It is a joint effort involving a Senior Manager, a (TFS) - Talent Fulfillment Specialist, and a (CC) - Career Counselor. Included are the process documents for MyScheduling I received in support of my company orientation (*Attachment C*). At no time in my orientation, or in my employment contract does it state that when you do your diligence and apply for roles, you may be terminated for identifying chargeable roles to apply for. It does state, and I quote verbatim my original TFS Kilee Westrick:

**RESPONSE:** Accenture denies the allegations, except admits that Plaintiff was informed on September 7, 2016 that he would be separated in one week unless he found a role, that he was told he could continue to apply for positions through Careers Marketplace, that Careers Marketplace is a system available to non-Accenture workers, and that Plaintiff's offer letter from Accenture does not indicate that he would be terminated for identifying chargeable roles.

50. ".. .as your Talent Fulfillment Specialist, I am responsible for managing the scheduling, or staffing, for you and all other individuals in the Testing resource pool. This means I will: work to match you to the right staffing opportunities, balancing business needs with career development, personal development and personal needs. Interact with your people advisor to remain connected on the holistic picture of your experience at Accenture. Identify and propose the right talent from this resource pool to fill open roles and meet people productivity targets."

**RESPONSE:** Accenture admits the quoted text accurately reflects portions of a February 25, 2015 message from Kilee Westrick.

51. "So, in essence, I will be responsible for working with you on your staffing assignments and helping you on your career journey from the staffing perspective". (From my first TFS Kilee Westrick). A few months later, Rokia Wagner became my TFS. Rokia Wagner, a very experienced TFS at Accenture, was not present in my termination conference call, just the Senior Manager Castellani and the HR Rep from Boston who was not known to me prior to that September 7 morning conference call. (*See the email in Attachment D*).

13

**RESPONSE:** Accenture denies knowledge or information sufficient to form a belief as to whether Diana Joseph was known to Plaintiff prior to the September 7, 2016 conference call, admits the quoted text accurately reflects portions of a February 25, 2015 message from Kilee Westrick, that Rokia Wagner became Plaintiff's TFS thereafter, that Wagner is an experienced TFS, and that Wagner did not participate in the September 7, 2016 conference call that was attended by Julianne Castellani and Diana Joseph.

52. These are direct quotes from the first email I received when I had my email configured to read messages at Accenture.

**RESPONSE:** Accenture denies knowledge or information sufficient to form a belief as to the allegations.

53. My company role-off [*sic*] process documents specified my responsibilities for returning all Accenture equipment, and I received a signed receipt from Accenture on September 14, 2016, all contrary to the signed Affidavit by the Accenture Attorney Ferrell and the Accenture HR representative Jennifer Hanna (*Attachment E*).

**RESPONSE:** Accenture denies the allegations.

54. Accenture's retaliatory actions included, *inter alia*: my team lead role authority was taken away by not placing me on any of multiple available roles, denying me fair pay, denying me timely salary review as promised as a condition of employment, rejecting my applications for employment within Accenture nationally and internationally, and for roles which even included a 20-30% reduction salary, relocation, and out of pocket expenses; retaliation by giving employment opportunities for which I was qualified to unqualified others non-US, other foreign nationals, and ultimately terminating his employment effective September 2016.

**RESPONSE:** Accenture denies the allegations.

55. Title VII prohibits discrimination on the basis of national origin and age. Indeed, it also prohibits retaliation for those who seek redress or enforcement for those who raise issues of inadequate policies and procedures to address discrimination of national origin and age.

**RESPONSE:** Accenture states that the allegations are legal conclusions as to which no response is required.

14

56. Accenture has a history of non-compliance with Title VII.

    **RESPONSE:** Accenture denies the allegations.

57. Many of the problems identified by the many Offices for Civil Rights in the US are complaints which were ignored by Accenture, and retaliatory actions against those for expressing any such complaints. I have filed the complaint to the CT CHRO, EEOC division area, and include a copy of my complaint and answer along with this filing, a letter for the right to sue in Federal court is attached herein.

    **RESPONSE:** Accenture denies the allegations, except admits that Plaintiff filed a charge with the Connecticut Commission on Human Rights and Opportunities and the Equal Employment Opportunity Commission.

58. After I was hired in 2015, I began to gather information from colleagues and personnel and management so that I could remain employed with Accenture, in light of the difficulty in which a minority of US citizens were unable to be placed onto projects at Accenture. When I proposed that a weekly meeting be called, there were instant consequences to the employees that wished to partake in my conference call. They were terminated, and they were terminated before me, and before they could even be placed on a project. I will supply all of those facts to this Federal Court. They are US citizens too.

    **RESPONSE:** Accenture denies the allegations.

59. As a full-time employee (W2) of Accenture the responsibility for putting me on client projects rests with Accenture and its employees charged with this particular task, NOT with me!! Therefore, Accenture should NOT have terminated me ... instead it should have terminated those employees for failing to place me on projects!

    **RESPONSE:** Accenture denies the allegations.

60. I made specific reference to incidents of discrimination to my TFS Rokia Wagner back in May - June 2016, reporting the same to my Senior Manager in July and August while I was staffed on a project with a nonprofit group in Hartford, and to the remote HR Manager Jennifer Hanna who specializes in these matters for Accenture, as I was directed to speak with her if I should choose to, and I did (*Attachment E*). Once again, Accenture denies that I spoke with them about discrimination, in this notarized document.

    **RESPONSE:** Accenture denies the allegations.

61. The incidents that I reported to my TFS are known to her, and have occurred on a few occasions. We met via conference call while I was not placed on a project. Those meetings were on my conference calendar in Microsoft Outlook.

**RESPONSE:** Accenture denies the allegations, except admits that Plaintiff met with Rokia Wagner regarding staffing while employed at Accenture.

62. Moreover, on a weekly call with my TFS Rokia Wagner and upwards of 20 colleagues of the call, in a question and answer segment, she told us we "would never find out why we were not selected on a project". I have the listing of the people who attended that conference call.

**RESPONSE:** Accenture denies knowledge or information sufficient to form a belief as to the truth of the allegations.

63. 8: When (dates) discrimination events occurred

**RESPONSE:** Accenture states that the paragraph does not contain allegations as to which a response is required. To the extent that a response is required, Accenture denies the allegations.

64. I have been discriminated against based on the incidents I reported to Accenture in my conference calls with my TFS, CC, Senior Manager and HR Representatives in clear violation of State and Federal laws/regulations.

**RESPONSE:** Accenture denies the allegations.

65. Discrimination incidents I reported date back to 2015. The first person to ask me was in 2015. 1 am only providing three below at this time:

**RESPONSE:** Accenture denies the allegations.

66. Did not report it to Accenture - Vinayagam Ganesan in June 2015

**RESPONSE:** Accenture denies the allegations.

67. October 2015 - Rohit Ahuja - Reported incident to Accenture, TFS

**RESPONSE:** Accenture denies the allegations.

68. May 2016, and August 12, 2016 - Anath Krishnan, Harsulkar Milind - Reported to Accenture, TFS, CC, and Senior Manager

**RESPONSE:** Accenture denies the allegations.

69. I made specific reference to incidents of discrimination to my TFS Rokia Wagner back in May - June 2016, reporting the same to my Senior Manager Castellani in July and August 2016 while I was staffed on a project with a nonprofit group in Hartford, and to the HR Manager Hanna who specializes in these matters for Accenture, as I was directed to speak with her if I should choose to, and I did (*Attachment E*). Once again, Accenture denies that I spoke with them about discrimination, in this notarized document.

**RESPONSE:** Accenture denies the allegations.

70. The incidents that I reported to my TFS are known to her, and have occurred on a few occasions. We met via conference call while I was not placed on a project. Those meetings were on my conference calendar in Microsoft Outlook.

**RESPONSE:** Accenture denies the allegations, except admits that Plaintiff met with

Rokia Wagner regarding staffing while employed at Accenture.

71. Moreover, on a weekly call with my TFS Rokia Wagner and upwards of 20 colleagues on the call, in a question and answer segment, she told us we "would never find out why we were not selected on a project". I have the listing of the people who attended that conference call.

**RESPONSE:** Accenture denies knowledge or information sufficient to form a belief as

to the truth of the allegations.

72. The Account (Sales) Managers that would not place me on any project in my local Connecticut Hartford region are foreign nationals from India in the Hartford region that I know;

**RESPONSE:** Accenture denies the allegations.

73. Siba P. Rath, R. Srivathsa, Nazish Bano, Madhura Phadke, Rajeev Sharma, Sivakumar Naganathan, Sarbamtira Barua, Venkata A. Konda, Athreya Shivakumar, Chethan Venkateshan, Nazish Bano, Shubam Banerjee, Manjunath Balur, Sudhir Supatkar, and Nitin Ghagare.

**RESPONSE:** Accenture denies the allegations.

74. After following the Accenture process to gain access to a project with diligence, and notifying all appropriate HR Managers about the internal blockage, I finally notified the former General counsel of Accenture who since became the Chief Executive of North America group, who acknowledged my complaint. She asserted that she takes discrimination incidents seriously, and failed to act.

**RESPONSE:** Accenture denies the allegations, except admits that Plaintiff submitted a complaint to Accenture's General Counsel who since became the Chief Executive Officer of Accenture North America.

75. There are hundreds of foreign nationals from India in my former office location of Hartford, and those demographics should be requested and supplied from Accenture.

**RESPONSE:** Accenture denies the allegations.

76. I made mention of the mistreatment I received as a US citizen to my TFS Rokia Wagner and Senior Manager Castellani long before I reported that on the September 7 call and spoke with HR Representative Jennifer Hanna, as a consequence of the suggestions from HR Representative on that call with Diana Joseph. I requested a meeting with Hanna on September 7 or 8th, and she scheduled with me to meet the following week when she was available at her convenience - all before September 14.

**RESPONSE:** Accenture denies the allegations.

77. I applied for more than 100 roles in the Accenture MyScheduling platform as an internal employee. The Account managers, role contacts, and (CSDS)'s denied me those roles, and supplied foreign based workers from India to the overwhelming majority of these roles, not US Citizens. My TFS Rokia Wagner stated that we would never find out why someone was selected, but I asked and found out directly. That evidence resides on the laptop I was required to return, which by law is the property of Accenture. I have supplied the names of those who interviewed me, and asked them who they selected and who they were comfortable with. I was repeatedly disqualified and screened out of work when account managers asked me about my national origin, when they could have asked the HR person instead. These occasions were demeaning and disturbing to me, as I was repeatedly disparaged by these foreign national account managers asking me about my H1B status and origin, which had nothing to do with my employment.

**RESPONSE:** Accenture denies the allegations, except admits that Plaintiff applied to roles in the MyScheduling platform, and denies knowledge or information sufficient to form a belief as to the number of roles to which Plaintiff applied.

78. As a full-time employee (W2) of Accenture the responsibility for putting me on projects rests with Accenture and its employees charged with this particular task, NOT with me! Therefore, Accenture should NOT have terminated me ... instead it should have terminated those employees for failing to place me on projects!

**RESPONSE:** Accenture denies the allegations.

79. In addition, I have been discriminated against based on the incidents I reported to Accenture in my conference calls with my TFS, CC, Senior Manager and HR Representatives in clear violation of State and Federal laws/regulations.

    **RESPONSE:** Accenture denies the allegations.

80. I reported discrimination and exclusion from working assignments due to the fact that the account managers, role contacts I was issued (as I already noted) are from India, and never placed me on a project.

    **RESPONSE:** Accenture denies the allegations, except admits that Plaintiff submitted a

complaint regarding his employment to Accenture.

81. The following are the names of the account managers in Hartford of Indian origin that have employed 100s of foreign national workers from India during the term of my employment, and not a single working assignment for me, a US citizen that had corresponded directly with them in person locally in Hartford.   was known to them and they each refused to place me, due to my status as a US Citizen worker.   That is discrimination.   That is why I have made this report to EEOC, for state and federal charges.

    **RESPONSE:** Accenture denies the allegations.

82. Siba P. Rath, R. Srivathsa, Nazish Bano, Madhura Phadke, Rajeev Sharma, Sivakumar Naganathan, Sarbamtira Barua, Venkata A. Konda, Athreya Shivakumar, Chethan Venkateshan, Nazish Bano, Shubam Baneijee, Manjunath Balur, Sudhir Supatkar, and Nitin Ghagare.

    **RESPONSE:** Accenture denies the allegations.

83. Once again, as a full-time employee (W2) of Accenture the responsibility for putting me on projects rests with Accenture and its employees charged with this particular task, NOT with me!! I did not refuse work! Therefore, Accenture should NOT have terminated me. Instead it should have terminated those employees for failing to place me on projects! I have been discriminated in clear violation of State and Federal laws/regulations.

    **RESPONSE:** Accenture denies the allegations.

84. I reported this to my TFS Rokia Wagner first.   Then I reported this same disparity of treatment to my senior manager Julianne Castellani.   As a consequence, I was not placed on a chargeable project, and was terminated, in specific chronological order as these emails relate, and on other emails that were on my laptop which I may not access.   The senior manager and TFS attempted to diminish any way of tracing their correspondence, and disguise their actions.   It was only through discussions with my former CC Sarfraz Mir that I came to learn that Accenture acted in such a way, and would disguise their

actions about discrimination. He was replaced as my CC with Connie Price in the May-June 2016 timeframe soon after I reported the initial discrimination in May to my TFS in a conference call, and then to him and my Senior Manager on another conference call.

**RESPONSE:** Accenture denies the allegations.

85. I reported incidents in conference calls from May 2016, through September 2016, and in corresponding meeting notes and emails.

**RESPONSE:** Accenture denies the allegations.

86. I received my HR file and discovered that I have good references within it, and that my CC Connie Price distorted what occurred on a client site due a Department of Justice Antitrust litigation intervention and my client engagement ended prematurely, and had nothing to do with my performance, and nothing to do with discrimination. This project involved work on the Cigna Corporation and Anthem merger activity. Accenture has employees consulting on both sides of the merger, and was involved in the legal merger between the two entities. When this assignment was ended due to DOJ litigation, my engagement there was ended prematurely, and it was originally forecast to continue through the end of 2016. Very likely, my assignment would have continued up to that time on that location. However, the DOJ litigation ended with a block of the merger. My assignment on the Accenture client project was aligned to promote that merger, for which we had to sign non-disclosure agreements.

**RESPONSE:** Accenture denies the allegations, except denies knowledge or information sufficient to form a belief as to whether Plaintiff and other Accenture workers provided services in connection with a corporate transaction between Cigna Corporation and Anthem.

87. Afterwards, Connie Price refused to place me on a project, my senior manager, my TFS, my local account managers all refused to place me on any project, when I sought to be placed on a project. I was willing to work on projects outside of the USA, i.e., internationally in several foreign nations on various Accenture projects. I was offered prospects to work in China and Saudi Arabia, nations that were not on My Scheduling preferences, and requested to go. I was still denied. I had more than 10 foreign nations in My Scheduling preferences.

**RESPONSE:** Accenture denies the allegations, except denies knowledge or information sufficient to form a belief as to Plaintiff's whether to and what extent Plaintiff was willing to work on projects abroad and what foreign nations were listed in his preferences.

88. 11: Probable cause issue – EEOC and CT CHRO (Connecticut Commission on Human Rights) did not request evidence from me. I have evidence to support the claims in this complaint, I have and will supply all of the evidence to demonstrate the discrimination practices of Accenture towards me. The EEOC office received information from Accenture and did not inform and provide that to me prior to providing me with the right to sue letter. They did not request information from me during their investigation after 2017. EEOC in turn summarized their investigation without any input from me, after assimilation from one party, the Defendant, and not the evidence I am prepared to supply to the Federal court. I reiterate, that evidence and information has not been acknowledged, since it was not requested by the EEOC in Boston.

**RESPONSE:** Accenture denies the allegations, except denies knowledge or information sufficient to form a belief as to Plaintiff's interactions with the Connecticut Commission on Human Rights and Opportunities and the Equal Employment Opportunity Commission.

89. Moreover, the information they did receive, if it is job performance related, as stated by the EEOC, was not supplied to me after I was terminated. I supplied a reasonable amount of time after termination in which it may have been furnished to me. This was after a considerable duration when I was not employed by Accenture. After they terminated me, it is apparent that Accenture may have supplied other contents of my HR file, which I do not have. What I do have was provided to me post termination by my HR Manager, but after I filed a complaint with the state of CT and EEOC sections, it appears Accenture has alternative information it supplied to EEOC. A hearing needs to be held if there is a disparity of such contents, since I requested any and all of such information after I was terminated. Moreover, Accenture has a business practice of not supplying letters of recommendation. But they did request for me to sign a release agreement in which two weeks of pay may be received which would be contingent upon me signing a release agreement if I decline any suit based on age discrimination, or any legal claim, I did not sign a release agreement because I was discriminated by management and HR for many reasons in addition to age, and told them so.

**RESPONSE:** Accenture denies the allegations, except admits that it has a neutral reference policy.

90. Afterwards, a year after, Accenture supplied reactions through an attorney to discredit me and my work record, on top of discrimination which I suffered. Also, I contacted the chief executive of Accenture North America, Julie Sweet, and she said that "they take issues about discrimination seriously." I have demonstrated that heavy discrimination has occurred already, and I brought it to her attention when I worked there, and she covered it up. It is very clear discrimination, by a high-ranking executive and position at Accenture, the highest-ranking position at Accenture in North America against US citizens.

**RESPONSE:** Accenture denies the allegations, except admits that Accenture takes allegations of discrimination seriously.

91. My HR manager provided that entire file to me, and I waited for the discovery and completion of that file post termination, and it did not contain any such "performance" information or details. A year after my complaint was filed in the state of CT, now such a file appears at the EEOC? I am in the process of requesting it.

**RESPONSE:** Accenture denies the allegations, except admits that Accenture provided Plaintiff's personnel file to him upon his request.

92. 13: CLAIM FOR RELIEF (Disparate Impact) (Title VII of the Civil Rights Act of 1964): Other damages requested. Plaintiff is now suffering and will continue to suffer, irreparable injury from Defendants' discriminatory acts and omissions.

**RESPONSE:** Accenture denies the allegations.

93. Defendant' conduct has caused, and continues to cause, Plaintiff substantial losses in earnings and other employment benefits.

**RESPONSE:** Accenture denies the allegations.

94. Wherefore relief is requested as follows:

    1. Judgment awarding compensatory and punitive damages, lost wages, back pay, front damages, damages for Title VII violations, past and future impairment of power to earn money, adverse treatment and emotional distress, damages for Title VII violations, adverse treatment and emotional distress. Compensatory damages, in an amount to be determined at trial but no less than 14 million dollars (14,000,000.00):

    2. A declaratory judgment that the practices complained of herein are unlawful and violate Title VII of the Civil Rights Act of 1964.

    3. A preliminary and permanent injunction against Defendants and their officers, and all persons acting in concert with them, from engaging in each of the unlawful policies, practices, customs and usages set forth herein;

    4. An order that Defendants institute and carry out policies, practices and programs that provide equal employment opportunities for all applicants and employees regardless of Race, National Origin, and Age, unless such status can be justified as job-related, where no less

    5. Attorney fees and costs;

    6. Prejudgment interest at the statutory rate;

7.      Such other and further relief as the Court may deem appropriate.

**RESPONSE:** Accenture denies that Plaintiff is entitled to the requested relief, or to any other relief in connection with this action.

## AFFIRMATIVE DEFENSES

Accenture hereby states the following affirmative and other defenses to the Complaint, but does not assume the burden of proof on any such defense except as required by applicable law with respect to the particular defense asserted.  Accenture reserves the right to assert other affirmative and additional defenses and/or to otherwise supplement this Answer upon discovery of facts or evidence rendering such action appropriate.

### FIRST DEFENSE

Plaintiff's damages are barred, in whole or in part, because Plaintiff has failed to make reasonable efforts to mitigate his damages, if any.

### SECOND DEFENSE

Plaintiff's claims are barred, in whole or in part, to the extent they were not filed within the applicable statute(s) of limitations and/or administrative filing periods.

### THIRD DEFENSE

Plaintiff's claims are barred, in whole or in part, to the extent that they exceed the scope of or are inconsistent with any charge of discrimination he filed with the Equal Employment Opportunity Commission.

### FOURTH DEFENSE

Accenture exercised reasonable care to prevent and promptly correct any purportedly discriminatory or harassing behavior in the workplace, and Plaintiff unreasonably failed to take

advantage of the preventive or corrective opportunities provided by it, or to otherwise avoid harm.

Dated: November 21, 2018

DEFENDANT ACCENTURE LLP

By:

B. Aubrey Smith (admitted *pro hac vice*)
WINSTON & STRAWN LLP
200 Park Avenue
New York, New York 10166
Tel: (212) 294-4758
Fax: (212) 294-4700
BASmith@winston.com

Its Attorneys

Daniel J. Fazio (admitted *pro hac vice*)
WINSTON & STRAWN LLP
35 West Wacker Drive
Chicago, Illinois 60601
Tel: (312) 558-5600
Fax: (312) 558-5700
DFazio@winston.com

Joshua A. Hawks-Ladds (ct09446)
Pullman & Comley, LLC
90 State House Square
Hartford, CT 06103
Telephone: (860) 424-4300
Facsimile: (860) 424-4370
E-mail: jhawks-ladds@pullcom.com

24